No. 87-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

SUSAN KAY BROWN,

Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District
In and for the County of Powell,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Conde F. Mackay, Public Defender, Anaconda, Montana

For Respondent:

Honorable Mike Greely, Attorney General, Helena, Montana
Kathy Seeley, Assistant Attorney General,
Christopher Miller, County Attorney, Deer Lodge, Montana

Submitted: March 1, 1988

Decided: April 7, 1988

Filed: APR 7 - 1988

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Brown appeals her bench conviction in the Third Judicial District, Powell County. She was found guilty of conspiring to violate § 45-7-307, MCA, by delivering a pistol to her husband, David Lee Brown, who was an inmate in the Montana State Prison. On June 10, 1987, defendant was sentenced to ten years in the Montana Women's Correctional Center. We reverse and remand.

The parties raise the following issues for our review:

1. Did the District Court properly admit David Lee Brown's suicide note into evidence as an exception to hearsay under Rules 803(24) and 804(b)(5), Mont.R.Evid.?

2. Did the District Court properly admit an informant's testimony into evidence as an exception to hearsay under Rule 801(d)(2)(E), Mont.R.Evid.?

3. Does sufficient evidence support the conviction?

In early September 1986, David Lee Brown asked a prison trustee, David Edwards, to help him smuggle a pistol into Montana State Prison. The trustee informed the prison investigator, Robert McNally, about the plan. McNally advised Edwards to go through with the plan but deliver the pistol to McNally.

According to the plan, Edwards would be on a lawn-mowing detail outside the prison compound. Defendant Brown would then drive past Edwards and throw a waterproof package containing a pistol and a bottle of whisky into the open field. Edwards would pick up the package, place it under the cowling of his lawnmower and bring it through the guard station into the prison compound. Edwards would then deposit the package in a water barrel near the vehicle maintenance area. David Lee Brown worked in the maintenance area and would retrieve the package at a convenient moment.

2

The delivery failed. On September 14, 1986, at the planned time and place, defendant Brown drove her blue Oldsmobile station wagon past Edwards with the window rolled down. According to Edwards, as the defendant passed him, she shook her head "no" and then nodded up and down. She proceeded to the prison visitors' lot and parked the car. She then entered the prison and visited David Lee Brown.

Later that same night, David Lee Brown told Edwards that his wife did not throw the package out because the nearby guard tower was manned. Prior to September 14, 1986, the guard tower had been unmanned while it was being rebuilt.

David Lee Brown planned another delivery time and method for September 17, 1986. The new plan called for defendant Brown to leave the package under the seat of her car with the door unlocked. Edwards would go to the prison visiting room and receive a signal from David Lee Brown indicating which seat the package was under. Edwards would then go to the parking lot and remove the package.

The second delivery also failed. On September 17, 1986, Edwards went to the visiting room and observed David Lee Brown, defendant Brown and her son. David Lee Brown looked at Edwards and shook his head "no." Edwards then informed McNally about the signal. McNally advised Edwards to proceed to the parking lot and check Brown's car. All four doors of the car were locked. The following day, David Lee Brown told Edwards that the delivery had been delayed because defendant Brown might also get some marijuana and would "bring everything at one time."

The third delivery was set up for September 19, 1986. On that day Edwards went to the visiting room at the planned time and observed David Lee Brown, defendant Brown and her son. David Lee Brown signalled that the package was under the driver's seat. Edwards proceeded to the parking lot.

3

Defendant Brown's car was parked in the prearranged place. The door on the driver's side was unlocked. Edwards found the package under the driver's seat and removed it.

Edwards then transferred the package to the rear floor of McNally's car which was parked nearby. Edwards locked the car and reported to McNally. McNally and the local sheriff went to McNally's car and retrieved the package. They opened the package but neglected to check it for fingerprints. The package contained a bottle of whisky, a loaded .22 caliber revolver and a dozen extra cartridges. Defendant Brown was arrested in the prison visiting room.

David Lee Brown was placed in maximum security. On the morning of September 21, 1986, he was found dead and hanging by the neck in his cell. He left a suicide note for defendant Brown, stating that he would never see her again and that he was "sorry for getting you involved with my troubles."

Issue 1. Suicide Note

The State admits that the suicide note was not written in furtherance of the conspiracy. However, the State contends that the note implicates Brown and was admissible as an exception to hearsay under Rule 804(b)(5), Mont.R.Evid. Rule 804(b)(5) states: "Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

The State argues that the trustworthiness of the suicide note is supported by David's knowledge of his impending suicide. In the note, David wrote that he never meant for defendant Brown "to get hurt." He continued: "It is alright what ever you told them or signed on me . . . you just did what I asked you to do for you loved me." The State further

4

argues that the trustworthiness is supported by David's attempts to exculpate defendant Brown. David wrote: "Mr. Weer: Please let my wife go. First time she ever done anything wrong. It was all my fault." The State concludes that David had no reason to lie when he wrote the note and therefore the note is trustworthy.

We review this issue under the guidelines of Rule 102, Mont.R.Evid., which states: "These rules shall be construed to secure . . . promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Any admission of hearsay must be reconcilable with the policy expressed in Rule 102.

The language and rationale of Rule 804(b)(5) is identical to its companion, Rule 803(24), Mont.R.Evid. Rule 804 applies when the declarant is unavailable; Rule 803 applies when the availability of the declarant is immaterial. The first twenty-three exceptions of Rule 803 and the first five exceptions of Rule 804 codify common and well-recognized exceptions to the hearsay rule.

However, the list of exceptions is not closed. The residual exceptions of Rule 804(b)(5) and Rule 803(24) provide for new and unanticipated situations which demonstrate a trustworthiness within the same spirit of the specifically stated exceptions. State v. Lapier (Mont. 1984), 676 P.2d 210, 212, 41 St.Rep. 203, 206.

The rationale behind a residual exception was first expressed in Dallas County v. Commercial Union Assurance Co. (5th Cir. 1961), 286 F.2d 388. In Dallas, an unsigned newspaper article written fifty years earlier was admitted as an exception to hearsay. The article described a fire in the local courthouse while it was under construction. Although the article did not fit into any recognized exception, it was admitted because it was probative of structural weakness in

5

the courthouse. The article also possessed an adequate guarantee of trustworthiness because a newspaper would probably not falsely report a courthouse fire. Dallas was cited by the United States Senate when Congress was drafting the Federal Rules of Evidence.

When the Montana Advisory Commission on the Rules of Evidence considered Rules 803 and 804, it believed the residual exceptions should allow room for "growth and development" of the law of evidence in the area of hearsay. The Commission stated: "The adoption of this exception changes existing Montana law to the extent that it allows the court to admit hearsay because an equivalent guarantee of trustworthiness exists even though there is no specific exception allowing it." Commission Comments on Rule 803(24), Mont.R.Evid. The residual exceptions of Rules 803 and 804 are consistent with the policy expressed in Rule 102.

However, the residual exceptions are not broad licenses for trial judges to admit hearsay statements that do not fall within the established exceptions of Rule 803 and 804. The residual exceptions should be used sparingly, and only in exceptional circumstances. The trial judge should exercise no less care, reflection and caution than prior courts did in establishing the recognized exceptions.

In the instant case, the suicide note was not admissible. It did not qualify as a recognized exception. Nor was it a "new and unanticipated situation" requiring "growth and development" of hearsay law, because suicide notes predate the rules of evidence by many years.

Furthermore, any hearsay statement logically must tend to prove the proposition for which it is offered. "Unless evidence naturally and logically tends to establish a fact in issue, it is not admissible." Britton v. Farmers Ins. Group (Mont. 1986) 721 P.2d 303, 315, 43 St.Rep. 641, 654. The

suicide note fails on this point. The note contained no direct statement implicating Susan Brown. The note does not mention the pistol, the plan, or the delivery. The most potentially damaging sentence merely read: "First time she ever done anything wrong." At most, the note infers some possible role in the conspiracy. We find that such speculation does not rise to a sufficient "guarantee of trustworthiness" under Rules 803(24) and 804(b)(5).

Alternatively, the State contends that the note was admissible as a statement against interest under Rule 804(b)(3), Mont.R.Evid. We do not agree. A statement against interest must expose the declarant to liability. David Lee Brown hanged himself soon after he wrote the note and surely was not in fear of criminal prosecution.

The State argues that even if the note was erroneously admitted, the error was harmless and not prejudicial because Brown's conviction was supported by other evidence. We find that the error was not harmless. The note contributed significantly to the State's case. The admission of the note affected the substantial rights of Brown and prejudiced her defense.

In conclusion, we hold that the note was not admissible. We reverse on this issue and need not address the merits of Issues 2 and 3.

J. A. Turnage
Chief Justice

7

We concur:

_John Conway Harrison_

_[signature]_

_L. C. Gulbrandson_

_John C. Sheehy_

_William E. Hunt Sr._

_R. C. McDonough_

Justices