No. 97-423

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 51

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LLOYD SCOTT MAIER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Robert P. Goff, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Antonia P. Marra; Bell & Marra, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General

Micheal S. Wellenstein, Ass't Attorney General, Helena, Montana

Brant Light, Cascade County Attorney

Julie Macek, Deputy Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: November 24, 1998

Decided: March 18, 1999

Filed:

No

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Lloyd Maier (Maier) appeals from the judgment of the Eighth Judicial District Court, sentencing him to prison on two counts of Attempt, Deliberate Homicide.**

**¶2. We affirm.**

**¶3. We restate the issues as follows:**

**¶4. 1. Whether the District Court violated Maier's right to confrontation under the United States and Montana Constitutions.**

A. Statements that Marty Hayworth made to police.

B. Statements that Nick Burwell made to police.

C. Statements that Robert Bradford made to police.

D. Marty Hayworth's testimony.

**¶5. 2. Whether the District Court erred in restricting Maier's cross-examination of Nick Burwell.**

**¶6. 3. Whether the District Court abused its discretion in refusing to grant a mistrial because of improper testimony.**

**¶7. 4. Whether the District Court erred in giving jury instructions 12 and 16.**

**¶8. 5. Whether Maier was denied his constitutional right to speedy trial.**

¶9. 6. Whether the District Court erred in sentencing Maier as a persistent felony offender.

¶10. 7. Whether the District Court abused its discretion in admitting expert testimony.

¶11. 8. Whether the District Court erred in allowing the State to vouch for a witness' character and to characterize Maier as a liar during its closing argument.

¶12. 9. Whether there was sufficient evidence to support the verdict.

Standard of Review

¶13. The standard of review for evidentiary rulings is whether a district court abused its discretion. *See* Seizure of $23,691.00 in U.S. Currency (1995), 273 Mont. 474, 479, 905 P.2d 148, 152.

Factual and Procedural Background

¶14. On the evening of August 12, 1995, Nick Burwell (Burwell), Maier and Marty Hayworth (Hayworth) visited at Maier's trailer in Great Falls. They left his trailer in Hayworth's van, which only had front windows, bringing with them a semi-automatic SKS-type rifle. Hayworth drove them to Shadow Mogensen's house, where he made a phone call. Shadow Mogensen (Mogensen) went into the van to visit with Maier. She saw the rifle lying between the front seats. Maier was in the front passenger seat. When the three men departed, Hayworth drove and Maier was in the front passenger seat. On that same evening, Robert Bradford (Bradford) and a friend, Brian Kunesh (Kunesh) were riding in a car in Great Falls. Very shortly after leaving Mogensen's house, Hayworth and Maier saw Bradford and approached him. Shots were fired from the van at the car, and Bradford and Kunesh each received leg wounds. Great Falls Police Detectives interviewed Maier and Hayworth. Hayworth and Maier initially told the police, in separate interviews, that Burwell fired shots from the van at Kunesh and Bradford. Hayworth later told the police that Maier, not Burwell, had fired the shots. The police arrested Hayworth and Maier. In March, 1996 Hayworth was convicted of two counts of attempted deliberate homicide by accountability.

¶15. During Maier's trial, Maier made a motion in limine to exclude hearsay statements by Hayworth. Maier contended that Hayworth would not testify and that statements Hayworth made to police and a statement that he made in his van before the shooting were therefore hearsay. At the motion hearing, the District Court was advised that Hayworth would assert his Fifth Amendment privilege at trial. The District Court ruled that Hayworth had no Fifth Amendment privilege because he had already been convicted. Maier argued that Hayworth had a Fifth Amendment privilege because he could be charged with perjury if his testimony varied from his testimony at his own trial. Maier also contended that if Hayworth asserted his Fifth Amendment privilege, Maier would be greatly prejudiced and his right to confront witnesses violated. The District Court asked the State whether it would grant Hayworth immunity from perjury. The State responded that immunity was generally not granted for perjury. However, the State guaranteed that it would not prosecute Hayworth for perjury. The State moved the District Court for a grant of immunity from perjury to Hayworth, and the District Court granted the motion. Maier did not object.

¶16. Following a jury trial in April, 1996, Maier was found guilty of two counts of Attempt, Deliberate Homicide. The District Court sentenced Maier to 70 years prison on Count one, Attempt (Deliberate Homicide) and, consecutive to Count one, to 15 years prison for Use of a Weapon, with five years suspended. The District Court also sentenced Maier to 70 years prison on Count two, Attempt (Deliberate Homicide) and, consecutive to Count two, to 15 years prison for Use of a Weapon, with five years suspended. The District Court ordered that the sentences for Counts one and two run concurrently.

Discussion

¶17. 1. Whether the District Court violated Maier's right to confrontation under the United States and Montana Constitutions.

¶18. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Montana's Constitution provides that "[i]n all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." Art. II, Sec. 24, Mont. Const.

¶19. In California v. Green, the Court considered whether the admission of prior

statements by a witness who was available for cross-examination at trial impaired a defendant's Sixth Amendment right of confrontation. *California v. Green* (1970), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. Defendant Green was charged with furnishing marijuana to a minor, Porter. Porter was the chief witness against Green; police had arrested Porter for selling marijuana to an undercover officer. At Green's preliminary hearing, Porter identified Green as his marijuana supplier. Green's attorney cross-examined Porter. At Green's trial, however, Porter was " 'markedly evasive and uncooperative.' " *Green*, 399 U.S. at 151, 90 S.Ct. at 1931, 26 L.Ed.2d at 493. Porter testified at Green's trial that Green called him and asked him to sell unidentified "stuff." *Green*, 399 U.S. at 152, 90 S.Ct. at 1932, 26 L.Ed.2d at 493. Porter admitted that he obtained marijuana after a phone conversation with Green, but when asked whether Green supplied him with marijuana, he said he was unsure how he got the marijuana because he was high then on LSD. On direct examination, the State read excerpts from Porter's preliminary hearing testimony that were admitted for the truth of the matter. Green cross-examined Porter.

¶20. The *Green* Court concluded that "it is [the] literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." *Green*, 399 U.S. at 157, 90 S.Ct. at 1934-35, 26 L.Ed.2d at 496. Further, the Green Court concluded that "the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories." *Green*, 399 U.S. at 164, 90 S.Ct. at 1938, 26 L.Ed.2d at 501.

¶21. In United States v. Owens (1988), 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951, the Court addressed whether the Confrontation Clause was violated "by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis of identification." *Owens*, 484 U.S. at 564, 108 S.Ct. at 845, 98 L.Ed.2d at 961. In explaining why the Confrontation Clause was not violated, the *Owens* Court concluded that

"[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through

cross-examination."

*Owens*, 484 U.S. at 558, 108 S.Ct. at 842, 98 L.Ed.2d at 957 (citation omitted). With the foregoing decisions in mind, we consider the evidence that Maier claims was admitted in violation of the Confrontation Clause.

**¶22. A.** *Statements that Marty Hayworth made to police.*

**¶23. Maier contends that the District Court erred in admitting Hayworth's statements to Great Falls Police Detectives Hollis and Steffens, because they are hearsay and unreliable. Maier argues that these statements are not admissible as co-conspirator statements. Maier also argues that the police testified about statements by Hayworth concerning matters that the State did not ask Hayworth when he testified, and that such statements by Hayworth were inadmissible. Further, Hayworth's refusal to answer some questions did not make his prior statements to police inconsistent with his testimony.**

**¶24. The State responds that the District Court did not err in admitting Hayworth's statements to police because they are prior inconsistent statements that are admissible under Rule 801(d)(1)(A), M.R.Evid. The State asserts that Hayworth's denials of some statements he made to police, his claims that he could not remember some prior statements, and his explanations of his previous statements rendered his testimony inconsistent with the statements he gave police.**

**¶25. Rule 801(d)(1)(A), M.R.Evid., provides:**

Statements which are not hearsay. A statement is not hearsay if: (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony.

Rule 801(d)(1)(A), M.R.Evid. Thus, we determine whether Hayworth's prior statements to police were inconsistent with his testimony at trial and whether he was subject to cross-examination about them.

¶26. In his testimony at Maier's trial, Hayworth was asked who fired shots from his van at Bradford's car. Hayworth answered, "I refuse to answer that. My life is not worth it. Even if it's Nick Burwell." Hayworth also testified that he did not remember telling police that Maier was in the front seat at the time of the shooting. We conclude that Hayworth's testimony was characterized by evasion, denial, and inability to remember. In *Green*, Porter's testimony was similarly " 'markedly evasive and uncooperative.' " *Green*, 399 U.S. at 151, 90 S.Ct. at 1931, 26 L.Ed.2d at 493.

¶27. At trial, Maier cross-examined Hayworth about his prior statements to police. Detectives Steffens and Hollis testified that Hayworth initially told them that Burwell was the shooter, that Hayworth later said that Maier had been the shooter, and that Hayworth explained that he had initially blamed Burwell because he was afraid of Maier. We conclude that Hayworth's trial testimony was inconsistent with his prior statements to police. *Compare* State v. Lawrence (1997), 285 Mont. 140, 160, 948 P.2d 186, 198 (holding "a claimed lapse of memory is an inconsistency within the meaning of Rule 801(d)(1)(A)"); State v. Devlin (1991), 251 Mont. 278, 282, 825 P.2d 185, 187 (concluding witness' "positive" contradiction of prior statement made prior statement inconsistent and substantively admissible).

¶28. We hold that Hayworth's prior statements to police were admissible as prior inconsistent statements under Rule 801(d)(1)(A), M.R.Evid. As prior inconsistent statements, his statements to police were admissible as substantive evidence. *See* State v. Charlo (1987), 226 Mont. 213, 215, 735 P.2d 278, 279. Because our holding is dispositive, we decline to address Maier's arguments that those statements were not admissible as co-conspirator statements nor as statements against his interest and the cases he cites for those assertions. We note that Maier mistakenly relies on State v. Gommenginger (1990), 242 Mont. 265, 790 P.2d 455 regarding the reliability of out-of-court statements. In *Gommenginger*, the Court considered whether there was sufficient evidence to convict the defendant and cautioned that "[a]n unreliable, prior inconsistent statement should not be the sole, substantive evidence upon which a jury should be allowed to base guilt." *Gommenginger*, 242 Mont. at 278, 790 P.2d at 463. Maier does not claim that Hayworth's prior inconsistent statements were the sole basis on which the jury concluded that Maier was guilty; his reliance on *Gommenginger* is misplaced.

¶29. Maier also argues that the State asked police witnesses questions regarding

Hayworth's statements that the State did not ask Hayworth, and that those questions are not admissible under any hearsay exception. We do not reach this issue because Maier has failed to reference with particularity the questions that were asked of police but not of Hayworth. Maier cites to a range of pages in the trial transcript but does not specify where impermissible testimony was admitted. Rule 23(e), M.R.App. P., provides:

References in briefs to the record. Whenever a reference is made in the briefs to the record, the reference must be to *particular parts of the record, suitably designated*, and to specific pages of each part, e.g., . . . Transcript, p. 231.

Rule 23(e), M.R.App.P. (emphasis added). Because Maier has not referred to particular parts of the record, we conclude that Maier has failed to comply with Rule 23(e), M.R. App.P.

**¶30. Finally, we reject Maier's argument that Hayworth's statements to police lacked necessary indicia of reliability and trustworthiness. In *Owens*, the Court concluded that inquiry into "indicia of reliability" or "particularized guarantees of trustworthiness" was not "called for when a hearsay declarant is present at trial and subject to unrestricted cross examination." *Owens*, 484 U.S. at 560, 108 S.Ct. at 843, 98 L.Ed.2d at 958 (citations omitted). In the present case, Maier has made no claim that his cross-examination of Hayworth was restricted, and we conclude that this argument too is without merit.**

**¶31. B. *Nick Burwell's statements to police.***

**¶32. Maier argues that the District Court erred in admitting statements that Burwell made to police after entering a cooperation agreement with the State. Maier contends that Burwell's statements to police were not statements against his interest and that they were not reliable because of his cooperation agreement. Maier also argues that the District Court erred in admitting hearsay testimony by Burwell regarding statements that Hayworth allegedly made in the van before the shooting. Burwell testified that when he, Maier, and Hayworth left Mogensen's house, Burwell heard Hayworth say, "there's Bradford, do you want to get him?" and he heard Maier respond, "Yes."**

¶33. The State argues that Maier has failed to cite the record regarding statements that Burwell made to the police and that Maier did not object when police testified about their interview with Burwell. The record shows that Maier objected at the outset of his trial to the admission of hearsay statements by Burwell through police testimony. However, although Maier cites Burwell's trial testimony, his appeal brief does not specifically cite the testimony of police about Burwell's statements to them. Because Maier has failed to cite with particularity to the record, we conclude that our review of this issue is foreclosed by Rule 23(e), M.R.App.P.

¶34. The State also argues that Burwell's testimony about the conversation between Hayworth and Maier in the van after they left Mogensen's house is admissible as part of the *res gestae* of the crime. The State argues that Burwell's testimony falls under the transaction rule and that the transaction rule, as set forth in § 26-1-103, MCA, is an exception to the hearsay rule.

¶35. Section 26-1-103, MCA, provides that "[w]here the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." In State v. Wing (1994), 264 Mont. 215, 870 P.2d 1368, this Court construed § 26-1-103, MCA, and concluded that "[w]hen the court is not dealing with the introduction of evidence of wholly independent or unrelated crimes, the evidence is properly admitted." *Wing*, 264 Mont. at 225, 870 P.2d at 1374 (citation omitted). In the present case, we hold that the District Court did not abuse its discretion in admitting Hayworth and Maier's statements in the van as part of the *res gestae*. Because this holding is dispositive, we do not address Maier's other objections to the admissibility of Burwell's testimony.

¶36. C. *Statements that Robert Bradford made to police*.

¶37. Maier also argues that the District Court erred in admitting hearsay police testimony concerning statements that Bradford made. The State responds that Bradford's statements to police were prior consistent statements that were admissible as nonhearsay under Rule 801(d)(1)(B), M.R.Evid. The State argues that the testimony of Detective Hollis concerning Bradford's statements was admissible because Maier impeached Bradford. The State also argues that if Detective Hollis' testimony about Bradford's testimony was hearsay, its admission was harmless error because there was no reasonable possibility that the evidence contributed to the

**conviction.**

**¶38. We conclude that Detective Hollis' testimony concerning what Bradford told him about the identity of the shooter was not a prior consistent statement. In State v. Lunstad (1993), 259 Mont. 512, 857 P.2d 723, this Court held that Rule 801(d)(1)(B) "only applies when the declarant's in-court testimony has been impeached by another party's allegations of subsequent fabrication, improper influence, or motive." *Lunstad*, 259 Mont. at 515, 857 P.2d at 725. The *Lunstad* Court further held that prior consistent statements must be made before a declarant's alleged motive to fabricate arose. *Lunstad*, 259 Mont. at 516, 857 P.2d at 726.**

**¶39. In the present case, Maier's cross-examination of Bradford clearly suggested that Bradford's motive to fabricate arose as soon as he learned of Maier's arrest:**

Q. So isn't it true that you didn't see who was sitting in there shooting at you--

(THEY ARE TALKING OVER EACH OTHER)

Q. That you ran around town trying to get the name of who was sitting in that seat shooting at you. And once you got the name, because Mr. Maier had been arrested, you went in to the police and you told them, Mr. Maier is the one that was shooting at me? Isn't that true?

A. No. I seen who it was. I just went around and tried to find out to verify my mind before I start accusing someone.

Bradford testified that he thought he had talked to police about Maier several days after Maier was arrested. We conclude that Bradford's statement was not a prior consistent statement under Rule 801(d)(1)(B), M.R.Evid., because he made it after his alleged motive to fabricate arose.

**¶40. In assessing the prejudicial effect of the District Court's error, we consider "the**

totality of the circumstances in which the error occurred." State v. Bower (1992), 254 Mont.1, 6, 833 P.2d 1106, 1109 (citation omitted). The State asked Detective Hollis:

Q. Was he [Bradford] at that time able to tell you, who, in fact, had shot at him?

A. Yes.

Q. And did you question him as to how certain he was of his identification?

Detective Hollis testified that Bradford told him the identity of the shooter. However, Detective Hollis never testified that Bradford told him that Maier was the shooter; thus, that part of Hollis' testimony could not have contributed to Maier's conviction. *Compare* § 46-20-701(1), MCA, (providing that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial"). We hold that the District Court's admission of Detective Hollis' hearsay testimony about Bradford's statements was harmless error.

¶41. D. *Marty Hayworth's testimony.*

¶42. Maier presents a variety of arguments that we summarize as follows. Maier appears to argue that the District Court should not have granted Hayworth immunity from perjury prosecution because Montana's immunity statute does not allow grants of immunity for perjury. When the District Court compelled Hayworth to testify while knowing that Hayworth would refuse to testify, Maier was prejudiced. Hayworth's refusal to answer certain questions "foreclosed real confrontation of the witness to Maier's detriment and his 'impeachment' was not true testimony which could be cross-examined." The prejudice from Hayworth's testimony was like that recognized by the Court in Douglas v. Alabama (1965), 380 U. S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. Maier also appears to argue that Hayworth was not an available witness and that the State exploited his presence on the stand so that it could admit his prior statements. Further, Hayworth's testimony at his own trial and his statements to police were unreliable and should not have been admitted. There was insufficient evidence to corroborate the testimony of Hayworth and Burwell. Finally, Maier argues that the difficulty Hayworth had remembering some of his prior statements as well as his admissions that he lied to police and that he was

under the influence of prescription drugs during his own trial impaired Maier's right to confront him.

¶43. The State responds that Maier's confrontation claims are without merit because Hayworth was subject to cross-examination about his prior statements and testimony. The State argues that although Hayworth denied making some prior statements and testified that he could not recall making some other statements, he affirmed having testified at his trial about Maier and having made statements to police about Maier. Further, Hayworth was subject to cross-examination about his statements. The State relies on *Owens* to argue that Hayworth's difficulty remembering some of his prior statements did not impair Maier's Sixth Amendment rights.

¶44. We conclude that neither the grant of immunity to Hayworth nor Hayworth's testimony prejudiced Maier. In having Hayworth testify, the District Court enabled Maier to confront Hayworth, thereby avoiding the prejudice that Maier asserted would result in the event that Hayworth asserted his Fifth Amendment privilege. Maier's claim that he was prejudiced by Hayworth's testimony is without merit.

¶45. Maier relies erroneously on two federal circuit court decisions, United States v. Beechum (5th Cir. 1978), 582 F.2d 898, cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L. Ed.2d 472 (1979) and U.S. v. Victor (1st Cir. 1992), 973 F.2d 975, to argue that forcing a witness onto a stand to be uncooperative so that the State can impeach the witness is prejudicial. In both decisions, the courts addressed prejudice resulting from a witness' assertion of his Fifth Amendment privilege. However, Hayworth did not assert his Fifth Amendment privilege, and we conclude that neither *Victor* nor *Beechum* applies in the present case.

¶46. We also conclude that Maier's reliance on *Douglas* is misplaced. In *Douglas*, defendant, Douglas, and another defendant, Loyd, were tried separately on charges of assault with intent to murder. Loyd was tried first and convicted. At Douglas' trial, the State called Loyd; however, Loyd refused to answer questions and asserted his privilege against incrimination. The State produced a document that it said was a confession made by Loyd:

Under the guise of cross-examination to refresh Loyd's recollection, the Solicitor purported to read from the document, pausing after every few sentences to ask Loyd, in

the presence of the jury, "Did you make that statement?" Each time, Loyd asserted the privilege and refused to answer, but the Solicitor continued this form of questioning until the entire document had been read.

*Douglas*, 380 U.S. at 416-17, 85 S.Ct. at 1075, 13 L.Ed.2d at 936. The Court in *Douglas* concluded that a jury could improperly infer from the Solicitor's reading of Loyd's "confession" and Loyd's reliance on his privilege that Loyd had made the statement and that the statement was true. *See Douglas*, 380 U.S. at 419, 85 S.Ct. at 1077, 13 L.Ed.2d at 938. However, Douglas could not test that inference by cross-examination because Loyd claimed a privilege against self-incrimination. *Douglas*, 380 U.S. at 420, 85 S.Ct. at 1077, 13 L.Ed.2d at 938. The *Douglas* Court concluded that "effective confrontation of Loyd was possible *only if Loyd affirmed the statement as his*." *Douglas*, 380 U.S. at 420, 85 S. Ct. at 1077, 13 L.Ed.2d at 938 (emphasis added).

**¶47. In the present case, *Douglas* does not apply because Hayworth did not exercise his privilege against self-incrimination. Moreover, although Hayworth refused to answer some questions concerning Maier's culpability, he affirmed making prior statements at his own trial and to police that implicated Maier as the shooter. Because he affirmed making his prior statements, Hayworth's refusal to answer some questions did not impair Maier's right of confrontation. *Compare Douglas*, 380 U.S. at 420, 85 S.Ct. at 1077, 13 L.Ed.2d at 938 (concluding "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his"). We note that Maier does not claim that his cross-examination of Hayworth was restricted. We agree with the State that Hayworth's refusal to identify the shooter and the van's front seat passenger neither violated Maier's right to confront nor prejudiced him. *Compare Owens*, 484 U.S. at 559, 108 S.Ct. at 842, 98 L.Ed.2d at 957 (concluding " '[t]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish' ") (citation omitted).**

**¶48. We also conclude that there was sufficient evidence to corroborate Burwell and Hayworth's testimony, as required under § 46-16-213, MCA. Section 46-16-213, MCA, provides:**

**Testimony of person legally accountable.** A person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense, as

defined in 45-2-301, unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.

Section 46-16-213, MCA. In State v. Kemp (1979), 182 Mont. 383, 597 P.2d 96, the Court held that "corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a *prima facie* case against him." *Kemp*, 182 Mont. at 387, 597 P.2d at 99. In the present case, even assuming that Burwell was an accomplice, the record shows that ample evidence corroborated Burwell and Hayworth's testimony about Maier. Bradford testified that Maier was the shooter. Although Bradford's testimony may have been "suspect," as Maier claims, Bradford's testimony corroborated Burwell and Hayworth. Mogensen's testimony implicated Maier and further corroborated Burwell and Hayworth. We hold that the District Court did not abuse its discretion in admitting Burwell and Hayworth's testimony.

**¶49. Maier's claims that Hayworth's difficulty remembering prior statements violated his right of confrontation are without merit. A witness' lapse of memory can be inconsistent with a prior statement. *See* State v. Charlo (1987), 226 Mont. 213, 215, 735 P.2d 278, 279 (recognizing that a lapse of memory can effectively deny a prior statement and therefore be inconsistent with it).**

**¶50. Finally, Maier appears to argue that Hayworth's admissions that he lied to police and that he was under the influence of prescription drugs during his own trial impaired Maier's right to confront him. This claim is also without merit. Maier does not claim that his cross-examination of Hayworth was restricted. Moreover, in *Owens*, the Court concluded that "[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Owens*, 484 U.S. at 558, 108 S.Ct. at 842, 98 L.Ed.2d at 957. Further, we note that because Hayworth testified and was cross-examined, Maier's suggestion that Hayworth was not available is mistaken.**

**¶51. 2. Whether the District Court erred in restricting Maier's cross-examination of Burwell.**

**¶52. Maier contends that the District Court abused its discretion and violated his right to confrontation in ruling that he could not cross-examine Burwell regarding**

the acts that underlay his conviction as a juvenile for forgery. Maier also argues that Burwell was an essential witness, because he was the only witness in the van willing to testify that Maier was the shooter.

¶53. The State concedes that the District Court erred in ruling that Maier could not ask Burwell whether he had ever been untruthful, because of this Court's decision in State v. Martin (1996), 279 Mont. 185, 926 P.2d 1380. However, the State argues that in light of the overwhelming evidence of Maier's guilt, the District Court's ruling was harmless error.

¶54. In *Martin*, the defendant objected to the State's cross-examination of a witness, Jan, regarding her prior conviction for the misdemeanor offense of unsworn falsification to authorities. The district court only allowed the State to ask questions that concerned Jan's having provided false alibi information to authorities. The *Martin* Court concluded "the facts surrounding Jan's providing false alibi information" were not evidence of a conviction offered to attack her credibility, which would violate Rule 609, M.R.Evid., but rather were evidence of specific instances of conduct that were probative of truthfulness under Rule 608(b), M.R. Evid. *Martin*, 279 Mont. at 200, 926 P.2d at 1390.

¶55. We conclude that the District Court erred in restricting Maier's cross-examination of Burwell, because the specific conduct that surrounded Burwell's forgery conviction was probative of Burwell's character for truthfulness or untruthfulness under Rule 608(b). Rule 608(b), M.R.Evid., provides in part that specific instances of conduct may "if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness." In *Martin*, the Court recognized forgery as an act that indicates dishonesty. *See Martin*, 279 Mont. at 200, 926 P.2d at 1390. However, we must determine whether the prejudice that resulted from Maier's restricted cross-examination affected his right to a fair trial. *See* State v. Huerta (1997), 285 Mont. 245, 252, 947 P.2d 483, 487 (holding that when record establishes guilt a new trial will not be granted unless error impaired right to fair trial).

¶56. The record establishes that Burwell was not the only witness whose testimony implicated Maier as the shooter. Hayworth and Bradford each identified Maier as the shooter. Mogensen testified that when Hayworth, Maier and Burwell left her house, Maier sat in the front passenger seat, an assault rifle that he owned lay

between him and Hayworth in the van, and she heard shots fired moments after their departure from her house. Thus even without Burwell's identification of Maier as the shooter, there was substantial evidence from which a jury could conclude that Maier was the shooter. *Compare* **State v. Arlington (1994), 265 Mont. 127, 142, 875 P.2d 307, 316 (concluding that although district court erroneously limited cross-examination, error was harmless because of overwhelming evidence that victim was beaten). We hold that the District Court's restriction of Maier's cross-examination of Burwell was harmless error.**

**¶57. 3. Whether the District Court abused its discretion in refusing to grant a mistrial because of improper testimony.**

**¶58. Maier argues that the District Court erred in denying his motion for a mistrial after Detective Hollis disclosed that Maier's probation officer was present when he interviewed Maier. The District Court denied the motion for a mistrial and ruled that Hollis' reference to a probation officer was not "sufficiently prejudicial that it causes your client any kind of damage." The District Court then instructed the jury:**

Ladies and gentlemen, there was a reference about a probation officer. I'm going to instruct you to disregard the evidence. That had no bearing on this issue in this trial.

**¶59. The State agrees that the reference to the probation officer was inappropriate but argues that the District Court did not abuse its discretion in denying the motion for a mistrial. The State contends that the single reference to Maier's probation officer was cured by the District Court's instruction to the jury.**

**¶60. In State v. Partin (1997), 287 Mont. 12, 951 P.2d 1002, the defendant moved for a mistrial when a State's witness testified about a prior arrest of the defendant that the district court had previously excluded in granting a defense motion in limine. The district court denied defendant's motion for a mistrial. The Court in *Partin* concluded that when a defendant moves for a mistrial, the motion should be granted where "the defendant will be denied a fair and impartial trial." *Partin*, 287 Mont. at 16, 951 P.2d at 1004. The *Partin* Court held that "[i]n determining whether a prohibited statement contributed to a conviction, the strength of the evidence against the defendant--together with the prejudicial effect of the testimony and whether a cautionary jury instruction could cure any prejudice--must be considered." *Partin*,**

287 Mont. at 18, 951 P.2d at 1005-06. The Court in *Partin* concluded that the district court abused its discretion in denying defendant's motion for a new trial.

¶61. We first consider the strength of the evidence against Maier in determining whether there is a reasonable possibility that Detective Hollis' reference to a probation officer contributed to Maier's conviction. As previously discussed, Hayworth's prior inconsistent statements as well as the testimony of Mogensen, Burwell, and Bradford were powerful evidence of Maier's guilt. We conclude that there was very strong evidence of Maier's guilt. *Compare Partin*, 287 Mont. at 21, 951 P.2d at 1007 (concluding that "the evidence against Partin was weak and conflicting").

¶62. Because Detective Hollis' disclosure about Maier's probation officer was inherently prejudicial, we also determine the extent of the prejudice and whether that prejudice was cured. *See Partin*, 287 Mont. at 20, 951 P.2d at 1007 (concluding that "testimony that a defendant has been arrested on a prior occasion is inherently prejudicial"). In State v. Ford (1996), 278 Mont. 353, 926 P.2d 245, a police officer testified that during a search of defendant's trailer he advised the defendant, Ford, "that there were charges pending on violation out of another state." *Ford*, 278 Mont. at 357, 926 P.2d at 247. Ford moved for a mistrial; the district court denied his motion. The Court in *Ford* affirmed the district court's denial of the mistrial motion, concluding that "the statement had only a slight prejudicial effect, if any." *Ford*, 278 Mont. at 360, 926 P.2d at 249. The *Ford* Court noted that the officer did not testify about prior crimes or convictions and that he did not speculate about the nature of the charges. *Ford*, 278 Mont. at 360, 926 P.2d at 249.

¶63. In the present case, we conclude that the prejudice from the disclosure that Maier had a probation officer was also slight. The jury could infer from the disclosure that Maier had been convicted previously, but Detective Hollis neither testified nor speculated about the nature of Maier's prior conviction. Like the district court in *Ford*, moreover, the District Court promptly admonished the jury to disregard the prohibited statement.

¶64. We also consider whether the District Court's admonition that the jury disregard the reference to the probation officer cured the prejudicial effect of that reference. In State v. Walker (1996), 280 Mont. 346, 352, 930 P.2d 60, 63, a police officer testified that he had recognized the defendant on a bank surveillance

videotape "because 'I have had past dealings with Mr. Walker . . . in regards to past forgery investigations.' " Walker moved for a mistrial. The district court denied the motion and admonished the jury to disregard the reference to any prior investigations that concerned the defendant. The Court in *Walker* affirmed the district court, concluding that "[i]n light of the entire evidence presented in this case, combined with the court's prompt admonition to the jury, we determine that [the police officer's] statement, by itself, did not contribute to Walker's conviction." *Walker*, 280 Mont. at 353, 930 P.2d at 64. In the present case, we similarly conclude that in light of the powerful evidence against Maier and the District Court's prompt admonition to the jury, the prejudice to Maier was cured. *Compare Partin*, 287 Mont. at 21, 951 P.2d at 1007 (concluding that "the stronger the evidence against the defendant, the less likely it is that a reference to other charges or a prior arrest will have a prejudicial effect"). We hold that the District Court did not err in denying Maier's motion for a mistrial.

¶65. 4. Whether the District Court erred in giving jury instructions 12 and 16.

¶66. Maier contends that the District Court erred in giving jury instruction 12. Maier appears to argue that the instruction is erroneous and prejudicial because it only concerned the flight of the defendant although Burwell also fled. By failing to mention Burwell's flight, the instruction suggested to the jury that Burwell's flight was acceptable. Maier argues further that the District Court erred in giving jury instruction 16 because the instruction confuses the issue of transferring intent from one object or person to another "to the extent it appears to the jury that no purposeful intent is required under the deliberate homicide statute and [sic] allows a presumption of a state of mind." Maier relies without any discussion on Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39.

¶67. The District Court did not err in giving jury instruction 12. Jury instruction 12 provides in pertinent part that "[i]f you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing or tending to show flight by the defendant." This instruction was taken verbatim from the 1990 Montana Criminal Jury Instructions. *See* State v. Patton (1996), 280 Mont. 278, 289, 930 P.2d 635, 641. In *Patton,* this Court affirmed "the use of jury instructions regarding a defendant's flight." *Patton*, 280 Mont. at 289, 930 P.2d at 641. Maier does not dispute that he fled the scene of the shooting, and he offers no authority for his claim that the instruction should have mentioned

Burwell's flight. Jury instruction 12 accurately reflected Montana law; Maier's argument is without merit.

¶68. Jury instruction 16 is a nearly verbatim restatement of §§ 45-2-201(1)(a), (1)(b), and (2)(a), MCA, and states in essence that conduct is the cause of a result when the result would not have occurred without the conduct. The instruction recognizes that a person who shoots at one person but hits another person can knowingly or purposely have caused that result. Contrary to Maier's claim, it offers no suggestion that purposeful intent is not required under Montana's deliberate homicide statute. Further, Maier's reliance on *Sandstrom* is mistaken. In *Sandstrom*, the Court considered a jury instruction that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts.' " *Sandstrom*, 442 U.S. at 513, 99 S.Ct. at 2453, 61 L.Ed.2d at 44. In the present case, however, jury instruction 16 clearly did not create a presumption regarding intent, and Maier's reliance on *Sandstrom* is mistaken.

¶69. In State v. Goulet (1997), 283 Mont. 38, 41, 938 P.2d 1330, 1332 (citation omitted), this Court held that "[t]he standard of review for claims of instructional error in a criminal case is whether the jury instructions, reviewed as a whole, fully and fairly instruct the jury on the law applicable in the case." In the present case, Jury instructions 17 and 18 provided that to convict, the jury must find that Maier acted with purpose to commit the offense of Attempt, Deliberate Homicide. Jury instruction 19 stated that a person commits the offense of deliberate homicide if "he purposely or knowingly causes the death of another human being." Jury instructions 13 and 14 defined the terms "knowingly" and "purposely." We hold that the jury instructions fully and fairly informed the jury and that the District Court did not err in giving jury instruction 16.

¶70. 5. Whether Maier was denied his constitutional right to speedy trial.

¶71. We note the following pertinent facts. The State filed an information against Maier on August 16, 1995; Maier and the State agree that he was incarcerated from then until his trial on April 22, 1996. Maier and Hayworth were originally set for trial together on December 5, 1995. However, in November, 1995 the trial date was reset for January 24, 1996 because of a conflict in the District Court's schedule. On December 12, 1995 Maier moved to sever his trial from that of Hayworth. The State did not object to the motion to sever. Hayworth then requested a continuance of the

January 24, 1996 trial date; Maier did not object. On December 26, 1995 the District Court continued the trial until March 19, 1996. In early January, 1996 the State filed an objection to Hayworth's motion to continue. On January 29, 1996 the District Court granted Maier's motion for severance, continuing Hayworth's trial until March 18, 1996 and Maier's trial until April 22, 1996. Maier's trial was postponed until April, 1996 because he had a pending Criminal Possession of Drugs charge that was set for trial before a different judge in March, 1996. The State later dismissed the drug charge against Maier.

¶72. Maier argues that the District Court erred in denying his motion to dismiss for lack of speedy trial. According to Maier, the reason for the delay in his trial was institutional and and therefore the delay should be charged to the State. Thus, when Hayworth moved to continue the January, 1996 trial date, Hayworth's motion should not have affected Maier's trial setting for that same date. Further, when the State dismissed a drug charge in Maier's other case, Maier should then have been tried before Hayworth. Maier argues that the delay in his trial date has prejudiced him greatly. While Maier was incarcerated, he was threatened by the alleged victim and his family and Maier was unable to work. The greatest prejudice resulted from Maier being tried after Hayworth. Maier argues that had he been tried before Hayworth, "the issues of confrontation and hearsay would have been clear cut."

¶73. The State argues that Maier's right to speedy trial has not been violated. The State concludes that it is responsible for 161 days of institutional delay and that Maier is responsible for 89 days of delay. The State argues further that Maier has not been prejudiced by the delay in his trial. Further, Maier failed to preserve his claim that he was prejudiced by being tried after Hayworth; he did not raise it in his speedy trial brief or at the district court hearing. Thus, that issue is not properly before this Court. The State also argues that Maier cannot complain that he was tried after Hayworth because his April, 1996 trial date was the result of his motion to sever and his failure to object to Hayworth's motion for continuance.

¶74. Whether a defendant has been denied his right to speedy trial is a question of constitutional law. *See* State v. Small (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378. We review a district court's conclusions of law to determine whether its interpretation of law is correct. *See* Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. Since 1972, this Court has followed the general guidelines set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33

L.Ed.2d 101, in reviewing claims that a defendant was denied his speedy trial right under the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution *See, e.g.,* State v. Sanders (1973), 163 Mont. 209, 213, 516 P.2d 372, 375. The four factors that we have considered under *Barker* are "(1) Length of delay; (2) Reason for the delay; (3) Defendant's assertion of the right; and (4) Prejudice to the defendant." State v. Puzio (1979), 182 Mont. 163, 165, 595 P.2d 1163, 1164. However, in City of Billings v. Bruce, 1998 MT 186, 965 P.2d 866, 55 St. Rep. 750, this Court set forth a new method for application of the *Barker* factors, and we apply that method in the present case.

¶75. First, we agree with the parties that the length of the delay is sufficient to trigger a speedy trial analysis. 251 days elapsed from Maier's arrest to his trial. *See Bruce,* ¶ 55 (concluding 200 days of delay trigger speedy trial analysis).

¶76. Second, we consider the reasons for the delay. Institutional delay is chargeable to the State. *See Puzio*, 182 Mont. at 167, 595 P.2d at 1165. The State is responsible for the time that elapsed between the filing of the information against Maier and the second, January 24, 1996 trial date.

¶77. We conclude, however, that Maier is responsible for the 89 days of delay that elapsed between the January, 1996 trial date and Maier's trial in April, 1996. Maier did not object to Hayworth's motion to continue the January trial date. As previously noted, however, the State objected to the continuance. Thus Maier, not the State, should be charged with the 55 days of delay that resulted from the continuation of the trial. *Compare Barker*, 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116 (commenting courts may "attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client"). Further, Maier's trial date was continued from March, 1996 until April, 1996 because of his motion to sever; thus, Maier is also responsible for that 34-day period of delay. Maier's argument that he would have had an earlier trial date had he known his other trial would be canceled is unpersuasive. Maier makes no suggestion that the State purposefully delayed dismissal of his other case to postpone his attempted deliberate homicide trial. Because the delay attributable to the State is less than 275 days, Maier has the burden of showing prejudice from the delay in his trial. *See Bruce*, ¶ 56.

¶78. Third, we conclude that Maier made a timely and proper assertion of his right

to speedy trial; Maier asserted his right before his trial date. In *Bruce,* we concluded that a defendant must assert his right to speedy trial before the commencement of trial. *See Bruce*, ¶ 57.

¶79. Fourth, we consider the prejudice to Maier from the delay in his trial, including traditional considerations such as whether there was oppressive pretrial incarceration, anxiety, or impairment of a defense. *See Bruce*, ¶ 58. However, the importance of this fourth factor depends on other considerations such as the length of and the reason for the delay. *See Bruce*, ¶ 58.

¶80. We conclude Maier was not prejudiced as result of the delay. Maier was not subjected to oppressive pretrial incarceration. The District Court properly considered the serious nature of the crimes with which Maier was charged in setting his bail at $250,000. Nor has Maier shown that he experienced excessive anxiety or concern as a result of his incarceration. Any anxiety that he experienced because of threats from the victim or the victim's family was a consequence of the crimes with which he was charged, not of his incarceration. Further, the record establishes that Maier did not preserve his claim that he was prejudiced by being tried after Hayworth. A party on appeal may not change his theory from that presented to a district court. *See* State v. Pollack, 1998 MT 105, ¶ 14, 288 Mont. 436, ¶ 14, 958 P.2d 75, ¶ 14. As previously discussed, moreover, the delay that led to Maier being tried in April, 1996 is properly chargeable to Maier, not to the State. Finally, Maier does not claim that his defense was otherwise impaired or prejudiced as a result of the delay. We hold that the District Court correctly ruled that Maier's right to speedy trial was not violated.

¶81. 6. Whether the District Court erred in sentencing Maier as a persistent felony offender.

¶82. Maier argues that he received inadequate notice that the State intended to treat him as a persistent felony offender under § 46-18-501, MCA, because the notice failed to state the dates and crimes for which he had previously been convicted. Maier cites State v. Madera (1983), 206 Mont. 140, 670 P.2d 552 without discussion. Maier appears to suggest that the State failed to prove that he had been convicted of the crimes alleged in the notice.

¶83. The State acknowledges that in its November, 1995 notice of intent to seek

treatment of Maier as a persistent felony offender (hereafter, "notice"), it made a typographical error. The notice stated that Maier was sentenced on March 31, 1993 in Yellowstone County for Criminal Endangerment although Maier was sentenced for that crime on March 31, 1992. We note that the notice also mentioned another conviction. However, in responding to Maier's objection to the notice, the State indicated that it would rely solely upon Maier's Criminal Endangerment conviction.

¶84. Maier's claim is devoid of merit. Maier had adequate notice of the State's intent to treat him as a persistent felony offender. The typographical error in the notice did not prejudice any substantive right of Maier and could not reasonably have confused him: the record shows that Maier had only one conviction for Criminal Endangerment in Yellowstone County. Finally, Maier's reliance on *Madera* is mistaken. In *Madera*, the Court affirmed the district court's treatment of a defendant as a persistent felony offender and recognized no rule of law that would help Maier here. We hold that the District Court did not err in sentencing Maier as a persistent felony offender.

¶85. 7. Whether the District Court abused its discretion in admitting expert testimony.

¶86. Maier argues that the District Court abused its discretion when it admitted the expert testimony of Officer Grubb regarding whether the "ejection pattern" of shell casings at the scene of the shooting was consistent with shots having been fired from the van. Maier contends that there was insufficient foundation to qualify Officer Grubb as an expert because Grubb had no training in ballistics or weapons and his only experience with rifles like that used in the shooting came from his ownership of an SKS rifle. Maier also appears to argue that because the van and Bradford's vehicles were gone when Officer Grubb arrived at the shooting scene, he could not reasonably form an opinion whether shell casings at the scene of the shooting were fired from a van.

¶87. The State responds that Officer Grubb's experience with an SKS assault rifle allowed him to offer his expert opinion. The State also argues that even if the District Court abused its discretion in allowing Officer Grubb to testify as an expert, the error was harmless because a number of eyewitnesses testified that the shots came from the van.

¶88. Rule 702 sets forth the criteria for the admissibility of expert testimony:

**Rule 702. Testimony by experts.**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Rule 702, M.R.Evid. We have previously held that "the determination of the qualification and competency of expert witnesses rests largely within the trial judge, and without a showing of an abuse of discretion, such determination will not be disturbed." Cottrell v. Burlington Northern R. Co (1993), 261 Mont. 296, 301, 863 P.2d 381, 384 (citation omitted).

**¶89. We conclude that the District Court abused its discretion in admitting Officer Grubb's testimony regarding whether shots were fired from the van. Officer Grubb had no specialized knowledge that would distinguish him from a lay person in opining whether the ejection pattern of shell casings was consistent with shots having been fired from a van. Thus, there was insufficient foundation to qualify Officer Grubb as an expert.** *Compare* **State v. Smith (1986), 220 Mont. 364, 377, 715 P.2d 1301, 1309 (concluding that a witness had specialized knowledge that "was not within the common knowledge o[f] men of ordinary education").**

**¶90. However, we hold that the District Court's abuse of discretion in admitting Officer Grubb's testimony was harmless error. A number of witnesses testified that shots were fired from the van, including Hayworth, Burwell, and Bradford. Thus, the error in admitting Officer Grubb's testimony did not prejudice Maier.** *See* **§ 46-20-701(2), MCA (providing that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").**

**¶91. 8. Whether the District Court erred in allowing the State to vouch for a witness' character and to characterize Maier as a liar during its closing argument.**

**¶92. Maier argues that the District Court erred in allowing the State, during its closing argument, to vouch for the character of Burwell. Relying on State v. Statczar**

(1987), 228 Mont. 446, 743 P.2d 606, Maier argues that it is error for a trial court to allow a prosecutor to vouch for a witness. Citing State v. Arlington (1994), 265 Mont. 127, 875 P.2d 307, Maier also argues that the District Court erred in allowing the State to characterize Maier as a liar.

¶93. We conclude that the State did not improperly vouch for the character of Burwell. In its closing, the State appropriately explained why it entered a cooperation agreement with Burwell in response to Maier's closing argument that Burwell was not credible because he had entered a cooperation agreement with the State. *See* State v. Whitlow (1997), 285 Mont. 430, 445, 949 P.2d 239, 249 (concluding prosecutor's comments not improper because defendant's closing argument "opened the door for the prosecutor's comments").

¶94. The record shows that Maier failed to object because the State characterized him as a liar. Section 46-20-104(2), MCA provides that "[f]ailure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2)." Because Maier failed to object, we also examine § 46-20-701(2), MCA. Section 46-20-701(2), MCA, provides in part:

A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment.

Section 46-20-701(2), MCA. Maier has not shown that the State's description of him as a liar prejudiced him. Indeed, Maier himself testified that he lied to police. Because Maier failed to object and because he has not shown that he can satisfy any of the requirements of § 46-20-701(2), MCA, we hold that he has waived any right to have this Court consider his claim. *See* State v. Schmalz, 1998 MT 210, ¶ 13, 964 P.2d 763, ¶ 13, 55 St.Rep. 889, ¶ 13 (holding defendant's failure to object to closing arguments and to make showing under § 46-20-701(2), MCA, waived right to appeal claims re closing argument). Finally, we note that Maier has failed to cite where in the record the State described him as a liar, as required by Rule 23(e), M.R.App.P.

¶95. 9. Whether there was sufficient evidence to support the verdict.

¶96. **Maier argues that there was insufficient evidence to support the verdict. He contends that "if not for the hearsay testimony which was erroneously introduced, and the prejudicial statements brought in by the State, as well as the lack of confrontation of witnesses, there would have been no conviction."**

¶97. **In State v. Plenty Hawk, this Court stated that "[t]he standard of review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Plenty Hawk (1997), 285 Mont. 183, 186, 948 P.2d 209, 210. As previously discussed, the record establishes that there was overwhelming evidence of Maier's guilt. We hold that there was sufficient evidence to support the verdict.**

¶98. **Affirmed.**

/S/ W. WILLIAM LEAPHART

We concur:


/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER


Justice James C. Nelson specially concurs.


¶99 I concur with the Court's opinion on all issues with the exception of Issue 7--whether the trial court erred in admitting the testimony of Officer Grubbs as to the "ejection pattern" of the SKS rifle as expert testimony. With regard to this issue, I, nonetheless, agree with the result of the Court's discussion.

¶100 The degree of a witness's qualification affects the weight of the expert's testimony, not its admissibility. *State v. Martin* (1987), 226 Mont. 463, 466, 736 P.2d 477, 479 (citing *State v. Berg* (1985), 215 Mont. 431, 434, 697 P.2d 1365, 1367). Here, Officer Grubb's experience and associated knowledge in handling and shooting an SKS assault rifle (experience and knowledge not possessed by the ordinary lay person); his investigation of the location of the shell casings and observation of broken driver's side glass from the victims' car; and his reliance on prior testimony concerning the location of the vehicles taken together constituted sufficient foundation to qualify him as an expert under Rule 702, M.R.Evid. Although, the *weight* of his testimony was subject to attack by cross-examination and refutation, Officer Grubb's opinions were, nevertheless, *admissible* as expert testimony on the "ejection pattern" issue. I do not agree that the District Court abused its discretion in admitting this testimony as expert testimony.

/S/ JAMES C. NELSON