DA 08-0324

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 236

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LAURA BRENDAL,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DC-2007-020
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kathleen Foley (argued), Attorney at Law, Missoula, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Matthew T. Cochenour
          (argued), Assistant Attorney General, Helena, Montana

                    Argued and Submitted:  May 20, 2009

                                Decided:    July 20, 2009

Filed:

                _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Laura Brendal (Brendal) appeals from her sentence in the Fourth Judicial District Court. Brendal pleaded guilty to fraudulently obtaining dangerous drugs (second offense), a felony in violation of § 45-9-104, MCA, and was sentenced to the Montana Women's Prison (MWP) for a period of 25 years, with 15 suspended. Prior to her sentencing, the State notified Brendal of its intent to have her sentenced as a persistent felony offender (PFO) pursuant to § 46-18-501, MCA, based on prior convictions for fraudulently obtaining dangerous drugs. The District Court sentenced Brendal as a PFO, and imposed a mandatory minimum of 10 years in prison. Brendal maintains that the District Court was proceeding under a mistake of law when it imposed this sentence, and that it should have considered sentencing her to a drug treatment program pursuant to its authority under the alternative sentencing authority (ASA) statute, § 45-9-202, MCA. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2    On December 31, 2006, Officer Trowbridge of the Missoula Police Department responded to a report that a female was trying to obtain drugs with a fraudulent prescription at a Walgreen's pharmacy in Missoula. Officer Trowbridge's investigation led to the arrest of Brendal, who was subsequently charged with one felony count of fraudulently obtaining dangerous drugs on January 16, 2007. Brendal initially pleaded not guilty to the charge.

¶3    Brendal subsequently filed a motion to suppress. On October 19, 2007, the State notified Brendal that it would seek increased punishment pursuant to the PFO statutes,

2

codified in Title 46, chapter 18, part 5. Prior to the instant charge, Brendal had previously been convicted of fraudulently obtaining dangerous drugs on nine occasions. Two of the most recent two convictions had occurred on December 17, 2003. Accordingly, Brendal could be sentenced as a PFO under § 46-18-502(2), MCA, since these two convictions had occurred within 5 years of the instant charge. The relevant portion of that statute reads as follows:

> (2) Except as provided in 46-18-219, an offender shall be imprisoned in a state prison for a term of not less than 10 years or more than 100 years or shall be fined an amount not to exceed $50,000, or both, if:
> (a) the offender was a persistent felony offender, as defined in 46-18-501, at the time of the offender's previous felony conviction;
> (b) less than 5 years have elapsed between the commission of the present offense and:
> (i) the previous felony conviction; or
> (ii) the offender's release on parole, from prison, or from other commitment imposed as a result of the previous felony conviction; and
> (c) the offender was 21 years of age or older at the time of the commission of the present offense.
> (3) Except as provided in 46-18-222, the imposition or execution of the first 5 years of a sentence imposed under subsection (1) of this section or the first 10 years of a sentence imposed under subsection (2) of this section may not be deferred or suspended.

Section 46-18-502(2) and (3), MCA.

¶4     After the District Court denied her motion to suppress, Brendal entered a plea of guilty. At that time, the State again provided noticed that it sought to sentence Brendal as a PFO. A sentencing hearing was held on May 7, 2008. Prior to the hearing, Brendal was arrested on March 24, 2008, by her pretrial supervision officer for allegedly trying to alter the results of a urinalysis test by substituting another person's urine for her own.

3

¶5 At the sentencing hearing, Brendal argued that she should receive a 5 to 10 year suspended sentence and be sent to the Teen Challenge residential drug addiction treatment program in Missoula, instead of being incarcerated in the MWP.[1] Brendal presented four witnesses in support of her sentencing proposal. Brendal argued that the ASA statute gave the District Court the discretion to consider such a sentencing option, and that it was not required to sentence her as a PFO and impose the 10-year mandatory minimum. The ASA statute reads in pertinent part as follows:

> **45-9-202. Alternative sentencing authority.** (1) A person convicted of a dangerous drug felony offense under this chapter may, in lieu of imprisonment, be sentenced according to the alternatives provided in subsection (2).
> (2) If the court determines, either from the face of the record or from a presentence investigation and report, that incarceration of the defendant is not appropriate, the court may, as a condition of a suspended or deferred sentence, impose one or more of the following alternatives:
> (a) imposition of a fine not to exceed the maximum amount provided by statute for those offenses that specify a fine as part of the penalty or $1,000 for those offenses that do not specify a fine;
> (b) commitment to a residential drug treatment facility licensed and approved by the state for rehabilitative treatment for not less than the minimum recommended time determined necessary by the facility and not more than 1 year;
> (c) mandatory service of not more than 2,000 hours in a community-based drug treatment or drug education program with compliance to be monitored by the probation and parole bureau of the department of corrections based upon information provided by the treatment or education program . . . .

¶6 The State asserted that the District Court was required to sentence Brendal as a PFO, and was therefore without the discretion to deviate from the mandatory minimum found in § 46-18-502(2), MCA. Brendal did not challenge the evidence in support of her

---

[1] The Teen Challenge program treats adults as well as teenagers.

designation as a PFO, or otherwise argue that any of the statutory exceptions in § 46-18-222, MCA, applied; rather, she asserted that the ASA statute was a more specific statute in this case—as it related specifically to the type of drug offense for which she was being sentenced—and that the District Court was not precluded from sentencing her under the ASA statute.

¶7 The District Court ultimately sentenced Brendal to 10 years at the MWP, concluding that the statutory scheme required it to impose the mandatory minimum. In imposing the sentence, the District Court judge reasoned that he was required to impose the mandatory minimum sentence, since there was no factual dispute as to the applicability of the PFO statutes and her case did not fall into one of the exceptions listed in § 46-18-222, MCA. *See* Opinion, ¶ 3. Furthermore, the District Court specifically concluded that incarceration would be appropriate for Brendal. The District Court noted that Brendal had been appearing before it on and off since 1996 and that the District Court had imposed a variety of sentences, but had failed to reach the "right mix" so that Brendal would be able to succeed in the community. The District Court observed that the MWP had an approach to treating chemical dependency which would be appropriate for Brendal, and that she could be considered for participation in the Teen Challenge program, or other applicable program, upon her parole. The District Court noted that the length of the sentence imposed was a reflection of her long-standing problem with drugs, and specifically noted that incarceration at the MWP would keep her "safe."

> You're not going to be found some morning by your daughter or some other relative dead in the community, which has happened a lot here, and so you're going to be safe. You're going to be in a program that tries

to utilize all the modern strategies to get you off opioids and become a productive member of society.

. . .

So my sentence is designed to be the least amount of time available that I think to make sure that you're protected, the community is protected, and your family has someone that they can enjoy over a longer period of time.

In its written order issued after the pronouncement of sentence, the District Court set forth further factual findings in support of its decision to incarcerate Brendal. These included her extensive criminal history, extreme difficulty in rehabilitation, and the conclusion that her needs would be better served in a prison or correctional center as opposed to a community facility.

¶8    Brendal now appeals from this sentence. She maintains that the District Court was proceeding under an error of law when it imposed this sentence and reasoned that it had no choice but to impose the mandatory 10-year sentence under the PFO statutes. Brendal argues that the ASA statute is more specific than the PFO statutes and gives the District Court the authority to consider sentencing her to the Teen Challenge program. Brendal argues her sentence should be reversed and remanded for the District Court to consider giving her an alternative sentence in accordance with its authority under the ASA statute.

¶9    The State urges us to affirm. The State argues that the District Court's sentence was statutorily authorized and legal, and that the District Court correctly determined an alternative sentence was not available to Brendal, since none of the exceptions listed in the PFO statutes applied. The State also asserts that the District Court found that

6

incarceration was appropriate for Brendal, and that an alternative sentence under the ASA statute was not available to her.

¶10   We state the issue presented by Brendal's appeal as follows:

*Did the District Court err in sentencing Brendal to the mandatory minimum under the PFO statutes?*

## STANDARD OF REVIEW

¶11   We review a criminal sentence for legality only, to determine whether the sentence falls within statutory parameters. *State v. Clark*, 2008 MT 112, ¶ 8, 342 Mont. 461, 182 P.3d 62. We review a district court's findings of fact to determine whether they are clearly erroneous. *State v. Dunkerson*, 2003 MT 234, ¶ 14, 317 Mont. 228, 76 P.3d 1085. "In Montana, criminal sentencing alternatives are strictly a matter of statute. Our standard of review, therefore, includes the question of whether the district court correctly applied the applicable statutes." *State v. Shults*, 2006 MT 100, ¶ 34, 332 Mont. 130, 136 P.3d 507 (citing *State v. Alden*, 282 Mont. 45, 49, 934 P.2d 210, 213 (1997)).

## DISCUSSION

¶12   Brendal argues the District Court's interpretation of the PFO and ASA statutes was incorrect, and that the District Court could have committed her to the Teen Challenge drug treatment program pursuant to its authority under the ASA statute. Brendal argues the ASA statute is specifically tailored to the drug offense for which she was convicted, and is more specific to her case than the PFO statutes. Brendal argues that the treatment-related sentencing options provided under the ASA statute were enacted to apply to defendants, like her, whose crimes appear related to addiction rather

7

than criminal predilection. The PFO statutes, by contrast, are general sentencing statutes for those designated as PFOs, without regard to the crime or crimes for which they were convicted. Brendal argues that since the PFO statutes and the ASA statute clash in this case, the PFO statutes must yield to the ASA statute. Brendal asserts that it would be illogical and contrary to principles of statutory interpretation to allow the more general statutes, i.e., the PFO, to limit the applicability of the ASA statute in this case given its specific and precise application.

¶13 Brendal further notes that the annotations to the ASA statute specifically state that the legislative purpose behind it was "to provide a curative, rather than purely punitive, sentencing possibility where the drug use by the defendant approaches or amounts to addiction." Here, Brendal argues that evidence of her chronic addiction to prescription drugs as presented to the District Court was both extensive and unchallenged, thus further demonstrating the application of this statute in her case. Additionally, Brendal argues that the ASA statute contemplates applying alternative sentences to repeat drug offenders without any qualification, and that it would be illogical to suggest that it applies only to repeat drug offenders whose last conviction or discharge date would place them outside the reach of the PFO statutes.

¶14 The State urges us to affirm. First, the State argues that Brendal's sentence was legal because it fell within the statutory parameters for her crime. The State points out that Brendal satisfies the definition of a PFO, and that the District Court was statutorily authorized to impose its sentence. Second, the State maintains that the ASA statute is simply inapplicable to Brendal in this case. The State notes that the ASA statute does not

8

apply as a factual matter because the District Court specifically found that incarceration at MWP would be an appropriate sentence given Brendal's long history of offenses and pattern of chronic drug use.

¶15 Additionally, the State argues that as a matter of statutory interpretation and application, the alternative sentences under the ASA statute are not available to Brendal given her designation as a PFO and the fact that the PFO statutes do not authorize an exception to the mandatory minimums under the ASA statute. The State notes that while the PFO statutes include exceptions from the mandatory minimum sentence pursuant to § 46-18-222, MCA, none of those exceptions are applicable in the instant case.[2] Since the State sought to sentence Brendal as a PFO and she met the designation, the State argues that she could be exempt from the mandatory minimum only if she met one of these statutory exceptions.

¶16 The State further asserts that the PFO and ASA statutes are not in conflict. The State asserts that the ASA statute gives district courts the ability to impose a non-prison sentence on a repeat felony offender, provided he or she does not fall into the narrow, time-dependent definition of a PFO. So long as a repeat offender is not sentenced as a PFO, then the ASA statute can apply. If, however, the offender meets the PFO definition and the State seeks to sentence her as such, then the district court is required to impose the mandatory minimum and cannot rely upon the ASA statute. Accordingly, the State

---

[2] Section 46-18-222, MCA, provides exceptions to the mandatory minimum under a variety of circumstances not present in the instant case.

argues that the ASA and PFO statutes are not actually in conflict, as claimed by Brendal, but are simply designed to apply in different sentencing situations.

¶17 Alternatively, if these statutes are perceived to be in conflict, the State argues that the PFO statutes would nonetheless control because they are more specific than the ASA statute. In this connection, the State notes that the PFO statutes are triggered only when an offender commits a second felony within a relatively short period of time. With respect to drug felonies, the State argues that the ASA statute applies to a broad spectrum of crimes whereas the PFO statutes apply only to those specific drug felonies committed within 5 years of a previous felony or release from a commitment which resulted from a previous felony.

¶18 "When possible, we interpret statutes to give effect to the Legislature's intent. We will also read and construe the statute as a whole to avoid an absurd result and to give effect to a statute's purpose." *In re Marriage of Shirilla*, 2004 MT 28, ¶ 12, 319 Mont. 385, 89 P.3d 1 (citing § 1-2-102, MCA). This Court operates under the presumption that the Legislature does not pass meaningless legislation, and we will harmonize statutes relating to the same subject in order to give effect to each statute. *Oster v. Valley Co.*, 2006 MT 180, ¶ 17, 333 Mont. 76, 140 P.3d 1079. This Court also presumes that the Legislature acts with deliberation and full knowledge of all existing laws on a subject. *Ross v. City of Great Falls*, 1998 MT 276, ¶ 17, 291 Mont. 377, 967 P.2d 1103. In situations where general and specific statutes exist and the two cannot be harmonized to give effect to both, the specific statute controls. *State v. Oie*, 2007 MT 328, ¶ 17, 340 Mont. 205, 174 P.3d 937.

¶19 By virtue of its plain language and its location in the criminal code, it is patent that the ASA statute was specifically enacted by the Legislature to give district courts alternatives to imprisonment for individuals convicted of the dangerous drug offenses in Title 45, chapter 9. *See* § 45-9-202(1), MCA. The ASA statute was initially enacted in 1969, and has undergone a series of refinements over the years. *See* 1969 Mont. Laws 771; 1991 Mont. Laws 3129-31. The annotator's note to the ASA statutes states that its purpose is to provide "alternative rehabilitative sentencing authority" to district courts for individuals who commit these drug offenses and to provide a "curative, rather than purely punitive, sentencing possibility where the drug use by the defendant approaches or amounts to addiction." In order for the ASA statute to apply, the offender must have committed one of these offenses, and the district court must determine that the incarceration of the defendant is not appropriate. *See* § 45-9-202(2), MCA.

¶20 The PFO statutes occur in Title 46, the "criminal procedure" section of the criminal code, and are not specific to any particular offense. PFO statutes impose mandatory minimum sentences if the offender meets the PFO criteria, save for the exceptions enumerated in § 46-18-222, MCA. The PFO statutes were originally enacted in 1973, four years after the ASA statutes. *See* 1973 Mont. Laws 1399-1400. Initially, the PFO statutes did not provide for any exceptions to the mandatory minimum sentences. Over the years, however, the PFO statutes were amended to provide exceptions in certain situations. *See* 1977 Mont. Laws 1962, 1965; 1981 Mont. Laws 517. The present form of § 46-18-222, MCA, was enacted by the Legislature in 2007. *See* 2007 Mont. Laws 2171-72.

11

¶21 Our previous case law has not been entirely clear on the question of whether the PFO statutes are designed to give district courts additional sentencing options, or whether the State's decision to seek PFO sentencing effectively divests district courts of sentencing discretion if the PFO criteria are established. In *State v. Damon*, 2005 MT 218, 328 Mont. 276, 119 P.3d 1194, for instance, a defendant convicted of driving under the influence (DUI) was sentenced as a PFO. He contended that the specific sentencing provisions of the DUI statutes, *see* § 61-8-731, MCA, should have applied and precluded the enhanced punishment available under the PFO statutes. *Damon*, ¶ 35. This Court disagreed. While we noted that the DUI statutes had specific sentencing provisions which were at odds with those set forth in the PFO statutes, we held that the sentences in the PFO were applicable.

> We follow the basic principle of statutory construction that "[w]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA. In general, the persistent felony offender statute, § 46-18-502, MCA, conflicts with all specific sentencing provisions. Indeed, by its very purpose § 46-18-502, MCA, provides penalties that are more severe, and therefore inconsistent, with specific criminal statutes. But the question is not whether the sentencing provisions of specific crimes are inconsistent with § 46-18-502, MCA. The question is whether "the underlying charge meets the definition of a felony, and the State has provided proper notice of its intent to seek persistent felony offender status."

*Damon*, ¶ 39 (quoting *State v. Yorek*, 2002 MT 74, ¶ 18, 309 Mont. 238, 45 P.3d 872).

¶22 We held that the DUI statutes fell with the ambit of the PFO statute, and stated that "[a] district court *possesses the authority* to designate and sentence a persistent felony offender pursuant to § 46-18-502, MCA, when the underlying charge meets the definition of a felony and the State has provided proper notice of its intent to seek

12

persistent felony offender status under § 46-13-108, MCA." *Damon*, ¶ 37 (emphasis added); *accord State v. Mainwaring*, 2007 MT 14, ¶ 15, 335 Mont. 322, 151 P.3d 53. This language from *Damon* seemingly implies that the PFO statutes give the district courts additional authority, but does not necessarily compel the conclusion that the PFO statutes strip the district courts of their ability to consider other statutory alternatives.

¶23   In *Shults*, a case subsequent to *Damon*, the defendant (Shults) was convicted of theft and an escape which did not involve the use of force, and sentenced as a PFO based on previous felony convictions. *Shults*, ¶ 11. Shults, like Brendal here, had a lengthy criminal history. On appeal, Shults argued that the district court had violated § 46-18-225(1), MCA, which required the district court to first consider alternatives to imprisonment in the sentencing of non-violent felony offenders. *Shults*, ¶ 35. Shults asked this Court to remand his sentence for further consideration of such an alternative sentence. *Shults*, ¶ 36. We rejected his argument as follows:

> We have previously held that a district court is granted broad discretion to determine the appropriate punishment, as it is in the best position to weigh the evidence, judge the credibility of witnesses, and resolve conflicts in the evidence. *Alden*, 282 Mont. at 51, 934 P.2d at 214. In this case, the District Court provided a ten-page statement explaining its reasons for imposing a sentence of lengthy incarceration in MSP. . . .
>
> In light of the above, it is clear that the court considered alternatives to imprisonment, as mandated by § 46-18-225, MCA, and explained why it chose to impose incarceration rather than alternative punishment. We therefore hold that the findings on which the court based its sentence were not clearly erroneous and that the court did not err when it sentenced Shults to a term of imprisonment.

*Shults*, ¶¶ 37-38.

¶24 Notably, in *Shults*, we did not hold that the district court was precluded from considering alternatives to imprisonment because the State sought to sentence Shults as a PFO. Instead, we apparently recognized the statutory authority of the district court to consider alternatives to imprisonment before agreeing with the State's efforts to sentence Shults as a PFO.

¶25 The difference between *Shults* and the present case is that the District Court here did not consider alternatives to imprisonment. As Brendal points out, the District Court did observe that it felt bound to sentence her as a PFO, given that the State sought a PFO designation and she met the statutory criteria. Notwithstanding this observation, however, it is clear from the hearing transcript and the District Court's written findings that the District Court concluded incarceration *was* appropriate for Brendal. Had the District Court concluded otherwise, it could have stated as much for the record and then imposed incarceration on the premise that the PFO statute forced the court's hand. However, the District Court did no such thing, choosing instead to elaborate upon the reasons it felt incarceration was necessary for Brendal's health and safety. *See* Opinion, ¶ 7. Because the ASA statute is invoked only if and when a court concludes that incarceration is not appropriate, *see* § 45-9-202(2), MCA, we conclude for the foregoing reasons that nothing in the District Court's reasoning supports application of that statute to Brendal. Thus, the District Court did not err in sentencing Brendal to incarceration at MWP.

¶26 As a matter of statutory construction, however, the District Court could have sentenced Brendal under the ASA to a treatment program if it had determined that

14

incarceration was not appropriate. Under the PFO provisions, if the prosecution "seeks treatment of the accused as a persistent felony offender," notice must be given. Section 46-13-108(1), MCA. After a hearing, if the judge finds any allegations of the prior convictions are true, "the accused must be sentenced as provided by law." Section 46-13-108(4), MCA. Both the ASA and PFO statutes set forth sentencing provisions that are "provided by law."

¶27 As noted above, when a general statute conflicts with a more specific statute, the more specific statute controls. *Oie*, ¶ 17; § 1-2-102, MCA. The ASA statute was enacted specifically to apply to drug offenses and is codified as Part 2 of the statutory scheme pertaining to drug offenses. Section 45-9-202(1), MCA, states:

> A person convicted of a dangerous drug felony offense under this chapter may, in lieu of imprisonment, be sentenced according to the alternative provided in subsection (2).

¶28 Thus, on the question of which statute is more "specific" in this case, the ASA statute controls because it was specifically enacted to provide an alternative to imprisonment only for those convicted of drug offenses under Title 45, chapter 9. The PFO statutes, by contrast, are more general because they apply to all criminal offenses, regardless of where they occur in Title 45.

¶29 The statutory schemes can also be reconciled another way. It has long been a maxim of jurisprudence that courts should harmonize statutes relating to the same subject. *Oster*, ¶ 17. "Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA. The provisions of the PFO statutes provide for imprisonment once a PFO

15

designation has been made. The ASA provisions are permissive. The defendant "may, in lieu of imprisonment, be sentenced according to the alternatives" provided under the ASA statute, if the district court finds that incarceration is inappropriate. Section 45-19-202(1), (2) MCA.

¶30 Holding that the District Court could have imposed a sentence under the ASA statute is a construction that gives effect to both statutes at issue here, as the District Court would have the ability to sentence under either scheme. On the other hand, holding that the PFO statutes are more specific and thus control to the exclusion of the ASA, does not give effect to both statutes as it precludes the opportunity to sentence under the ASA statute, even if a district court determines as a factual matter that incarceration is not appropriate. Under this construction, as urged by the State, the whole purpose of the ASA statute is unnecessarily defeated.

¶31 Thus, in the interests of harmonizing the PFO and ASA statutes in a manner that gives effect to them both, we hold the District Court could have sentenced Brendal under the ASA statute if it had determined that incarceration was inappropriate, in spite of the fact that the State sought to sentence her under the PFO statutes and she met the required PFO designation.

**CONCLUSION**

¶32 For the foregoing reasons, we affirm the District Court. However, we further hold that the PFO statutes do not preclude a district court from providing an alternative sentence under the ASA statute for an individual convicted of a drug-related offense in

16

Title 45, chapter 9, provided the required criteria to impose an alternative sentence are satisfied.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice John Warner concurs.

¶33 I agree that Brendal's sentence should be affirmed. However, I disagree with the Court's analysis.

¶34 In my view, the alternative sentencing authority statute does not override the mandatory language of the persistent felony offender statute and only provides an alternative when a person is not designated a persistent felony offender. The plain, mandatory language of the persistent felony offender statute reveals a legislative intent to sentence individuals more strictly who repeatedly commit felonies within a given time period. The legislature contemplated exceptions, as provided by the persistent felony offender statutes, however, none of the exceptions apply to Brendal's situation.

¶35 I agree with the District Court that when an offender is designated a persistent felony offender and meets the statutory criteria, the court is bound to sentence under the persistent felony offender statute. Once the State files its notice that it is seeking a persistent felony offender designation, the defendant has the opportunity to object to the allegations and the court determines if the allegations are true. If the allegations are true,

17

the "accused must be sentenced as provided by law." Section 46-13-108(3), (4), MCA. The persistent felony offender statute provides, "[A] persistent felony offender shall be imprisoned . . . ." Section 46-18-502(1), MCA. This language removes the district court's sentencing discretion once a defendant is designated a persistent felony offender and precludes it from considering alternative sentences. As we have explained in our prior cases, that once a person is designated a persistent felony offender, all of the other sentencing statutes are superseded by § 46-18-502, MCA, because the persistent felony offender statute does not make a distinction between the types of felonies to which it applies. *See State v. Damon*, 2005 MT 218, ¶ 39, 328 Mont. 276, 119 P.3d 1194; *State v. Yorek*, 2002 MT 74, ¶ 18, 309 Mont. 238, 45 P.3d 872 (followed in *State v. Pettijohn*, 2002 MT 75, ¶¶ 12-14, 309 Mont. 244, 45 P.3d 870).

¶36 The Court should not strain so mightily to harmonize § 45-9-202, MCA, the alternative sentencing authority statute, with the persistent felony offender statutes--they are written to dove-tail each other. The scheme is meant to be simple. When an offender is designated a persistent felony offender, § 45-9-202, MCA, is superseded and he or she is sentenced under § 46-13-108(3), (4), MCA.

¶37 I concur with the result, but would affirm Brendal's sentence on different grounds.

/S/ JOHN WARNER

Justice Jim Rice joins in the foregoing concurrence.

/S/ JIM RICE

18

Justice Jim Rice, concurring.

¶38 I agree with Justice Warner's concurrence and offer these additional thoughts. The Court's treatment of the PFO statutes is not a fair one. The Court selectively quotes from § 46-13-108(4), MCA, which provides that the accused must, after the PFO process has been completed, be sentenced as "provided by law." Seizing upon this phrase in isolation, the Court then leaps to the conclusion that it could mean either the ASA or the PFO statutes, as both are "provided by law." This is hardly a justifiable interpretation, which should be obvious for a fair reading of the entire PFO provision.

¶39 Section 46-13-108(1), MCA, instructs that "if the prosecution *seeks treatment of the accused as a persistent felony offender*," the prosecutor must first give notice of that fact at or before the omnibus hearing. (Emphasis added.) Subsection 108(2) provides that the notice must specify the accused's prior convictions. Subsection 108(3) provides that the court may conduct a hearing to determine if the allegations in the notice are true. Then, subsection (4) provides that "[i]f the judge finds any allegations of the prior convictions are true, *the accused must be sentenced* as provided by law." (Emphasis added.)

¶40 This statute sets forth the PFO procedural process, initiated by a prosecutor who "seeks treatment of the accused as a PFO" and, upon completion, clearly leads to a mandatory sentence—the accused "must be sentenced" as a PFO. The Court's assertion that this PFO process leads to the ambiguous conclusion that an accused can be sentenced under any sentencing statute—and that a PFO sentence can then be rejected by the sentencing court—is untenable.

19

¶41 I concur in the result but dissent from the Court's statutory interpretation.

/S/ JIM RICE