DA 11-0743

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 208

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ANTHONY JEROME THOMPSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 10-672
Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Robin A. Meguire, Attorney at Law, Great Falls, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney; Julie Mees, Deputy County
Attorney, Billings, Montana

Submitted on Briefs:  July 18, 2012
Decided:  September 18, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Anthony Jerome Thompson (Thompson) appeals from his conviction and sentence for partner or family member assault, a felony, in the Thirteenth Judicial District, Yellowstone County.  The District Court designated Thompson a persistent felony offender (PFO) and committed him to the Department of Corrections (DOC) for the statutory minimum period of five years.

¶2     We review the following issues on appeal:

¶3     *Whether the District Court properly excluded evidence that the complaining witness had a history of a felony forgery charge over a decade before Thompson's trial.*

¶4     *Whether the District Court imposed a legal sentence when it sentenced Thompson to a five-year commitment to the DOC.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     Thompson and Debbie Love (Love) were in a relationship for five years.  They went gambling at casinos in Billings, Montana, on December 20, 2010.  Thompson's ex-girlfriend also happened to be at one of the casinos.  Thompson left abruptly after Love questioned the presence of Thompson's ex-girlfriend at the casino.

¶6     Love and Thompson returned to Love's house.  Thompson refused to talk about his ex-girlfriend.  Thompson instead tried to initiate sex with Love.  Love did not want to have sex with Thompson.  As a result, Thompson held Love down and punched her repeatedly. Love asked Thompson why he would beat her if he loved her.  Thompson stopped punching Love.

2

¶7 Love went to the bathroom to assess her wounds. She discovered that she had a bloody nose and that her face was swollen. Love cleaned up and returned to sleep in the same bed as Thompson. Love told Thompson that she would make breakfast when they woke up the next morning. Love called 911 while noisily washing dishes to prevent Thompson from hearing the telephone call.

¶8 Police officers arrived at Love's residence on the morning of December 21, 2010. Officers photographed Love's face and noticed bruising and other injuries. The officers arrested Thompson and took him to the police station.

¶9 The State charged Thompson with felony partner or family member assault in violation of § 45-5-206, MCA. The State timely filed notice of its intent to request Thompson's designation as a PFO. Thompson filed several pretrial evidentiary motions. One motion requested judicial notice of the court records related to Love's felony forgery charge from 2000.

¶10 The District Court ruled that Thompson could not question Love regarding her former felony forgery charge due to its remoteness in time. The State had charged Love with forgery more than 10 years before it filed the charges against Thompson. The court further noted that the State had dismissed the forgery charge pursuant to a pretrial diversion agreement.

¶11 The jury returned a unanimous guilty verdict at the end of the trial. Thompson filed a sentencing memorandum in which he argued that § 46-18-502, MCA, did not require the court to sentence Thompson to the five-year minimum sentence mandated for a PFO.

Thompson suggested that the exception to the five-year minimum contained in § 46-18-222(5), MCA, applied to him. Thompson argued that this exception authorized the court to consider a lesser sentence. The State disagreed.

¶12　The court held a sentencing hearing on September 23, 2011. Thompson requested a three-year DOC commitment with all of the years suspended. The District Court determined that Thompson's PFO status and the threat that he posed to the community supported its decision to impose the full five-year DOC commitment. Thompson appeals.

## STANDARD OF REVIEW

¶13　We review for abuse of discretion a district court's evidentiary rulings. *State v. Norquay*, 2011 MT 34, ¶ 13, 359 Mont. 257, 248 P.3d 817. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice. *In re Estate of Hannum*, 2012 MT 171, ¶ 18, 366 Mont. 1, ___ P.3d ___. We review for legality only a criminal sentence that imposes more than one year of incarceration. *State v. Habets*, 2011 MT 275, ¶ 12, 362 Mont. 406, 264 P.3d 1139.

## DISCUSSION

¶14　*Whether the District Court properly excluded evidence that the complaining witness had a history of a felony forgery charge over a decade before Thompson's trial.*

¶15 Thompson argues that the District Court denied him the right to present a complete and full defense when it excluded evidence of Love's decade-old felony forgery charge and pre-trial diversion agreement. A district court possesses discretion to exclude evidence of a person's character for the purpose of proving an action in conformity therewith. M. R. Evid. 404(a). The District Court cited M. R. Evid. 608(b) to support its decision to exclude evidence of Love's 2000 felony forgery charge. M. R. Evid. 608(b) provides that a court possesses the discretion whether to admit specific instances of conduct to show a witness's credibility.

¶16 This Court recognizes that forgery indicates dishonesty. *State v. Martin*, 279 Mont. 185, 200, 926 P.2d 1380, 1390 (1996). Thompson points to our decision in *State v. Maier*, 1999 MT 51, 293 Mont. 403, 977 P.2d 298, in which this Court determined that a district court improperly had excluded evidence of a witness's juvenile forgery conviction. The Court determined that the specific conduct that surrounded the witness's forgery conviction "was probative" of the witness's character for truthfulness or untruthfulness under M. R. Evid. 608(b). *Maier*, ¶ 55. The Court nevertheless affirmed Maier's conviction in light of the substantial evidence from which the jury could have concluded that Maier had been the shooter. *Maier*, ¶ 56. The Court did not address, however, whether M. R. Evid. 608(b) allowed a district court to balance other factors to determine admissibility.

¶17 The State merely charged Love with forgery. No jury ever had convicted Love of forgery. Love entered a pretrial diversion program. The District Court assessed these extenuating circumstances and the time that had elapsed between her charge in 2000 and the

trial in 2011. The court concluded that a decade constituted too much time between the alleged offense and Love's testimony.

¶18 Exclusionary rules do not reduce a defendant's right to present a defense so long as the rules are not arbitrary or disproportionate to their purpose. *State v. Johnson,* 1998 MT 107, ¶ 22, 288 Mont. 513, 958 P.2d 1182. The court allowed Thompson to present evidence to attack Love's credibility. Thompson presented recordings of phone calls from Love in which Love insinuated that she would help him with the case in exchange for money. Thompson cross-examined Love regarding her inconsistent statements to police officers regarding another incident of Thompson's alleged abuse. The District Court excluded only a small portion of an otherwise considerable amount of damaging evidence regarding Love's credibility.

¶19 Moreover, Love's testimony alone did not provide the only evidence of the alleged assault. Police officers photographed Love's face on the morning after the alleged assault. The photographs documented bruising and other injuries suffered by Love. These photographs and the testimony of the investigating officers provided substantial evidence of Thompson's assault of Love. *Maier*, ¶ 56. The court did not abuse its discretion in excluding Love's 10-year-old forgery charge based on the remoteness in time of the forgery charge, not a conviction, and the substantial evidence in the record to support the assault against Love.

¶20 *Whether the District Court imposed a legal sentence when it sentenced Thompson to a five-year commitment to the DOC.*

6

¶21　Thompson contends that the court operated under a mistake of law when it imposed the five-year DOC commitment. Thompson cites this Court's analysis of the PFO statutes in *State v. Brendal,* 2009 MT 236, 351 Mont. 395, 213 P.3d 448. The Court in *Brendal* determined that district courts must consider statutory alternatives to the PFO statutes when justified. The district court in *Brendal* clearly felt constrained by the PFO statutes. *Brendal*, ¶ 7. Brendal failed to argue, however, that the PFO exception codified in § 46-18-222, MCA, applied.

¶22　Section 46-18-502(1), MCA, with few exceptions, requires a court to impose a five-year minimum sentence at the Montana State Prison for a PFO. Section 46-18-502(3), MCA, requires, with limited exceptions, that the first five years of a PFO sentence "may not be deferred or suspended." Section 46-18-222, MCA, sets forth the circumstances under which a court may forego these restrictions. In particular, Thompson argues that the District Court misinterpreted § 46-18-222(5), MCA. Subsection (5) allows a court to forego the restrictions when the offender inflicted "no serious bodily injury" upon the victim.

¶23　Thompson alleges that the State failed to present evidence that Love suffered "serious bodily injury" as defined in § 45-2-101(66), MCA. Thompson contends, as a result, that the statutory exception to a PFO sentence contained in § 46-18-222(5), MCA, should apply. We need not determine definitely whether the State presented evidence that Love suffered "serious bodily injury" in light of the fact that the court exercised its discretion under § 46-18-222(5), MCA, to depart from the mandatory PFO minimum sentence.

¶24 The court committed Thompson to the DOC rather than sentencing him to five years "in the state prison" generally required for a PFO by § 46-18-502(1), MCA. The court followed the statutory exception authorized by § 46-18-222, MCA. The court explained to Thompson, however, that his "criminal history suggests risk to the community" and "suggests risk to significant others that [Thompson] might become involved with." The court balanced protection to the community and a chance at rehabilitation for Thompson. The court also acknowledged Thompson's designation as a PFO.

¶25 The District Court lawfully based its sentence upon Thompson's likelihood of reoffending and the court's desire to rehabilitate him. The court departed from the PFO statute by committing Thompson to the DOC. The District Court "correctly applied the applicable statutes" in Thompson's sentencing. *State v. Shults*, 2006 MT 100, ¶ 34, 332 Mont. 130, 136 P.3d 507.

¶26 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ BETH BAKER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE