FILED

June 16 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0779

DA 13-0779

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 163N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DIANA MCHENRY ARNOLD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DC 12-106C
                    Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Herman A. "Chuck" Watson, III, Christopher C. Young, Attorneys at Law, Bozeman, Montana

            Matthew A. Dodd, Attorney at Law, Bozeman, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney, Bozeman, Montana

                      Submitted on Briefs:  April 22, 2015
                              Decided:  June 16, 2015

Filed:

_____
                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Diana Arnold appeals from her conviction of attempted deliberate homicide and aggravated burglary in the Eighteenth Judicial District Court, Gallatin County. We affirm.

¶3 Arnold argues the District Court erred when it did not allow a recording of the victim's prior statement to be played for the jury, rejected her proposed verdict form, and did not instruct the jury about further proceedings.

¶4 In 2008, Arnold rented a basement apartment to David and Kathleen McDunn. The McDunns moved out after a few months, and a legal dispute followed. On May 30, 2012, Arnold entered the McDunns' home with a small-caliber revolver. Although accounts of the ensuing events differ dramatically, the result was that David suffered gunshot wounds to the back of the head and near his clavicle. Arnold was wearing a hat with a wig sewn in, an extra-large men's coat, over-sized shoes, gloves, and earplugs. She had covered the interior of her vehicle in plastic and loaded her car with containers of gasoline. She placed crumpled newspaper and matches throughout the McDunns' home and brought two gallons of gas from her car into the house.

2

¶5    Arnold suffered a traumatic brain injury during a car accident in 1999, and since then has experienced memory loss and dissociative episodes.  Arnold claimed that her actions in the McDunn home took place during one of these episodes.  She said she did not know how she got there.  Arnold also said she usually dressed in "throw-away" outer clothing, covered her car in plastic, and loaded it with gasoline when getting ready to deal with burn piles on her property.  She also carried a gun when working on her property to ward off wildlife.  She claimed she had simply undergone these normal preparations when she mysteriously ended up at the McDunns' home.

¶6    Arnold was charged with attempted deliberate homicide and aggravated burglary. At trial, Detective Paul Lewis testified as the lead investigator.  The defense cross-examined Detective Lewis about a statement he took from David on the day after the incident.  The defense asked to play a recording of the statement.  The State objected on hearsay grounds.  The District Court sustained the objection, but said it would revisit the issue during David's testimony.  The defense later argued it should be able to play the full recording "for context," including David's attitude and tone of voice.  The District Court concluded that a transcript of the recording could be used to impeach David during his testimony, but did not allow the defense to play the recording.

¶7    The defense proposed a jury instruction on the issue of mental disease or defect that included the sentence: "If you find Defendant guilty OR not guilty by reason of mental disease or defect, there will be further proceedings conducted that do not involve the jury."  The defense also proposed a verdict form that included four options: not guilty; guilty; guilty, but mentally ill or mentally defective; or not guilty by reason of

3

mental disease or defect. The verdict form also stated, "If you find Ms. Arnold guilty, but mentally ill and/or mentally defective or not guilty by reason of mental disease and/or defect, Ms. Arnold will not be released from custody and there will be further proceedings by this Court." The District Court informed the defense that it did not "see a legal basis for giving [the jury] the choice of guilty but suffering from mental disease or defect." The District Court used the State's verdict form and proposed instruction. During deliberations, the jury requested a copy of the statute relating to mental disease or defect. The District Court denied the request on the grounds that the jury instructions already provided the statutory definition. Arnold was convicted of both offenses and later sentenced to 100 years in the Montana State Prison.

¶8 A district court has broad discretion when it instructs a jury. *State v. Michaud*, 2008 MT 88, ¶ 16, 342 Mont. 244, 180 P.3d 636. We review a district court's decision regarding jury instructions to determine whether the court abused its discretion. *Michaud*, ¶ 16. Evidentiary rulings are also reviewed for abuse of discretion. *State v. Thompson*, 2012 MT 208, ¶ 13, 366 Mont. 260, 286 P.3d 581.

¶9 Arnold acknowledges that the recording of David's interview was hearsay, but argues it was admissible pursuant to the residual exception, which allows use of a hearsay statement "not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." M. R. Evid. 803(24). First, Arnold did not raise this argument in the District Court. Second, the residual exception "'should be used sparingly, and only in exceptional circumstances.'" *State v. Hocevar*, 2000 MT 157, ¶ 50, 300 Mont. 167, 7 P.3d 329 (quoting *State v. Brown*, 231 Mont. 334,

4

338, 752 P.2d 204, 207 (1988)). No exceptional circumstances exist where the defense was allowed to use a transcript to impeach a witness's inconsistent statements, and where the officer who took the statement was available to testify to his observations at the time of the interview. Arnold also argues that the recording was the "highest and best evidence" of what she characterizes as David's "evolving account" of events. The State takes this as a reference to the best evidence rule, which relates to the authenticity of an exhibit, not the value of its contents. *State v. Elliott*, 2002 MT 26, ¶ 74, 308 Mont. 227, 43 P.3d 279 (citing *United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053-54 (9th Cir. 1976)). Arnold does not claim the transcript was inaccurate or inauthentic. The District Court did not abuse its discretion by not allowing Arnold to play the recording.

¶10 A defendant's alleged mental disease or defect is considered at three stages of a criminal proceeding. *State v. Korell*, 213 Mont. 316, 322, 690 P.2d 992, 996 (1984). Before trial, evidence may be presented to show that the defendant is not competent to stand trial. Section 46-14-103, MCA; *Korell*, 213 Mont. at 322, 690 P.2d at 996. During trial, the jury must determine whether the defendant had the requisite state of mind at the time the offense was committed. Section 46-14-102, MCA; *Korell*, 213 Mont. at 322-23, 690 P.2d at 996. If the jury finds that the defendant did not have the requisite state of mind due to a mental disease or defect, it is instructed to return a verdict of not guilty by reason of mental disease or defect. Section 46-14-214, MCA; *Korell*, 213 Mont. at 323, 690 P.2d at 996. After trial, the sentencing judge considers evidence of mental disease or defect to determine whether the defendant was able to appreciate the criminality of his or her acts. Section 46-14-311, MCA; *Korell*, 213 Mont. at 323, 690 P.2d at 996. A jury

5

should not consider possible sentencing outcomes in reaching its verdict. *State v. Sanchez*, 2008 MT 27, ¶ 61, 341 Mont. 240, 177 P.3d 444 (citing *State v. Brodniak*, 221 Mont. 212, 226-27, 718 P.2d 322, 332 (1986), *overruled in part on other grounds by State v. Van Kirk*, 2001 MT 184, ¶ 43, 306 Mont. 215, 32 P.3d 735).

¶11 The District Court did not abuse its discretion when it concluded that the jury should not be instructed about further proceedings. It also did not abuse its discretion when it used a verdict form stating the three possible verdicts allowed under Montana law: guilty, not guilty, or not guilty due to mental disease or defect. "Guilty, but mentally ill and/or mentally defective" is not recognized by Montana law. A defendant who committed the offense, but lacked the requisite mental state due to mental disease or defect, must be found not guilty due to mental disease or defect. A defendant who possessed the requisite mental state, but nonetheless suffers from some degree of mental illness, must be found guilty, and his or her mental state will be considered at sentencing. Finally, Jury Instruction 20 accurately and correctly gave the definition of mental disease stated in § 46-14-101(2), MCA. The jury was fully and fairly instructed on the law.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of relevant standards of review. The District Court did not abuse its discretion.

¶13     Affirmed.

                                        /S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE