Justice Jim Rice delivered the Opinion of the Court.
*88 ***60 ¶ 1 Bruce Frey appeals his conviction, after jury trial, of three counts of child sexual assault, and also disputes the prosecution costs, jury costs, and court technology fees imposed by the Eleventh Judicial District Court, Flathead County. We restate the issues on appeal as follows:
1. Did the District Court abuse its discretion by partially denying Frey's pre-trial motion in limine to exclude evidence of prior bad acts?
2. Did the District Court abuse its discretion by admitting evidence about Frey's ability to see?
3. Did the District Court err by imposing $9,181.45 in prosecution and jury costs as well as a $30 technology fee for each convicted count?
¶ 2 We affirm on Issues 1 and 2, and reverse and remand for further proceedings as to Issue 3.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 In December 2013, Frey was charged with three counts of Sexual ***61 Assault in violation of § 45-5-502(3), MCA. During the years from 2001 to 2006, Frey was alleged to have sexually assaulted three females who were then between the ages of five and fourteen.
¶ 4 Prior to trial, Frey moved in limine to prohibit the State from presenting evidence of his seven prior criminal convictions and to exclude any reference to earlier investigations into alleged child sexual abuse committed by Frey. The State objected to the exclusion of evidence pertaining to Frey's 1991 convictions for false reporting to law enforcement, which it intended to introduce during cross-examination as bearing upon Frey's truthfulness, pursuant to M. R. Evid. 608(b), if Frey chose to testify. In a pre-trial written order, the District Court denied Frey's motion as to his convictions for false reporting for purposes of the State's use of the evidence under M. R. Evid. 608(b), reasoning that, "[t]he Court has no additional information regarding the conviction for false reports to law enforcement, but it is inclined to allow the inquiry on cross-examination." The District Court granted Frey's motion to exclude evidence concerning other prior bad acts.
¶ 5 At the January 2015 trial, Frey appeared using a walking cane and wearing dark glasses. As his appellate briefing acknowledges, Frey presented in the courtroom "as a blind man." Frey testified his eyesight began deteriorating in the late 1990s and that he began walking with a cane in 2010. Frey indicated in a pre-trial motion that in October of 2013, he had "recently gone blind" and enrolled in an eyesight rehabilitation program in Boise, Idaho.
¶ 6 In its case-in-chief, the State solicited testimony from witnesses about Frey's eyesight during the years of the alleged abuse-between 2001 and 2006. Victim K.B. testified that, during the time of her abuse, Frey "had the ability to see and drive." K.B. recalled Frey recreating, swimming, roasting marshmallows, catching a snake, and target shooting with a gun while he was on a camping trip with K.B.'s family. When asked about whether Frey could see at that time, another witness stated, "Yes, he could see. I sure hope so. He drove us around a lot." Other witnesses described Frey working as a maintenance supervisor, driving, shopping, watching movies, camping, swimming, and picking up the victims from school. Frey did not object to this questioning by the State.
¶ 7 As the final witness in its case-in-chief, the State called Detective Kipp Tkachyk, the lead investigator in this case. Detective Tkachyk described interviewing Frey in 2010 after advising Frey of his Miranda rights and receiving a signed consent form from him. When asked if Frey appeared to have any difficulty reading the form, Detective Tkachyk *89 responded, "No. He was able to sign right on the signature ***62 line, and then I actually asked him if he would date it, he went back and dated it on the date line." Frey made no objection to this testimony.
¶ 8 Detective Tkachyk then testified about an occasion, sometime after the 2010 interview, when he escorted Frey to an eye examination in Salt Lake City, Utah. The State asked whether Frey made "any statements that he could see while you were with him on that trip." Frey then offered a non-specific objection "to this line of questioning," to which the State responded that the questions would "speak to Mr. Frey's credibility." The court overruled the objection. Detective Tkachyk testified that, at the beginning of the trip, "it appeared that [Frey] had a difficult time seeing," but that, after further observation, he determined that Frey "actually could see" and therefore, "didn't feel it was necessary to hold his hand or arm as we walked to-across the tarmac to the airplane, and he was able to do that on his own." Tkachyk recalled how Frey walked around the waiting room of the hospital before his eye exam, occasionally looking out the window. Tkachyk stated that Frey, while at the window, "commented to me that he could see a cement pump truck which was, my recollection, easily three blocks away," and that Frey described the orange boom that was attached to the truck and how it was being used to pump cement. Tkachyk then completed his testimony and the State rested.
¶ 9 After presenting the testimony of two witnesses, defense counsel advised the court that Frey was going to testify. The jury was dismissed from the courtroom to allow counsel and the court to discuss a cautionary jury instruction related to Frey's 1991 convictions for false reporting, during which defense counsel stated, "Here is the deal. I'm going to offer it.... I'm not letting you talk about it before I talk about it." Counsel continued, "[T]he court has stated that that subject can be brought up by the State regarding the false reports to law enforcement, it's certainly something that I'm going to ask my client on direct and have him explain the circumstances of that."
¶ 10 At the point in Frey's direct testimony when he intended to address the 1991 convictions, the court read the cautionary instruction to the jury, which instructed that the evidence was to be used only "for the purpose of referring to the Defendant's character for truthfulness or untruthfulness." Frey then testified about his false reporting convictions. In closing, defense counsel argued that, although a defendant does not have to testify, "Mr. Frey did testify, he wanted you to hear his side of this story, he wanted you to hear it from him, not from me just cross-examining the State's witnesses."
¶ 11 The jury found Frey guilty of committing three counts of Sexual ***63 Assault under § 45-5-502(3), MCA. Frey appeals.
STANDARD OF REVIEW
¶ 12 District courts have "broad discretion to determine whether evidence is relevant and admissible." State v. Kaarma , 2017 MT 24, ¶ 11, 386 Mont. 243, 390 P.3d 609. We review evidentiary determinations for abuse of discretion. State v. MacGregor , 2013 MT 297, ¶ 44, 372 Mont. 142, 311 P.3d 428. "This standard presumes that there may be more than one correct answer to an evidentiary issue. Otherwise, there would be no basis for discretion." State v. Huerta , 285 Mont. 245, 254, 947 P.2d 483, 489 (1997). A district court abuses its discretion "if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." State v. Passmore , 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229. Finally, we review de novo , any ruling made by the district court that is based on its interpretation of an evidentiary statute or rule. Passmore , ¶ 51.
DISCUSSION
¶ 13 Frey argues the District Court "committed reversible error when it allowed the prosecution to attack [his] credibility." Frey's arguments are overlapping but he essentially contends the source of this error was twofold. First, Frey argues the District Court erroneously denied his pre-trial motion in limine to prohibit the State from admitting evidence of his convictions for false reporting. Second, Frey argues the *90 court erroneously admitted testimony regarding his ability to see. Based upon these asserted evidentiary errors, Frey asserts he was "forced to testify" to "explain his version of the events" and "counter the attack on his credibility" by offering evidence of his own prior convictions before the State cross-examined him. Further, Frey argues a "blatant violation of the Rules of Evidence" permitted the State to attack his credibility through extrinsic evidence of his eyesight, thus implicating his fundamental right not to testify.
¶ 14 Though intertwined in Frey's arguments, the District Court's denial of Frey's motion in limine was a separate ruling from the admission of trial testimony by the State witnesses, and we undertake review of the issues separately for the sake of clarity and to accurately reflect the District Court's actions.
¶ 15 1. Did the District Court abuse its discretion by partially denying Frey's pre-trial motion in limine to exclude evidence of prior bad acts?
¶ 16 Frey argues the District Court erred by denying his motion to prohibit the State's use of his 1991 false reporting convictions. Citing ***64 M. R. Evid. 403, Frey argues these prior convictions were "too remote and prejudicial," outweighing their probative value, and notes the convictions occurred twenty-four years before trial and many years before the alleged offenses in this case occurred. The District Court permitted the convictions to be used under M. R. Evid. 608(b), explaining that "a specific instance of conduct may be inquired into on cross-examination of the witness but only if it is probative of truthfulness or untruthfulness," and concluding it was "inclined to allow the inquiry on cross-examination."
¶ 17 M. R. Evid. 608(b) generally prohibits use of extrinsic evidence to prove specific instances of conduct of a witness, "for the purpose of attacking or supporting the witness' credibility." However, as the Rule provides, and this Court has recognized, a court "possesses the discretion whether to admit specific instances of conduct to show a witness's credibility," i.e., their character for truthfulness, which is to be "inquired into on cross-examination of the witness." State v. Thompson , 2012 MT 208, ¶ 15, 366 Mont. 260, 286 P.3d 581 ; M. R. Evid. 608(b).
¶ 18 In Thompson , the district court excluded admission of the Defendant's ten-year-old forgery charge, citing its remoteness in time, the fact the forgery was merely charged but did not result in a conviction, and, as this Court noted, the admission of other substantial evidence supporting Defendant's guilt and challenging his credibility. Thompson, ¶¶ 18-19. We held the district court's exclusion of the forgery charge evidence was not an abuse of discretion. Thompson, ¶ 19.
¶ 19 Frey contends that his twenty-four-year-old convictions were too remote and therefore their prejudicial effect substantially outweighed their probative value under M. R. Evid. 403, and that the outcome in Thompson -exclusion of the evidence-should control the outcome here. However, regarding remoteness, we "consistently have declined to establish an arbitrary time limit for admitting other acts or crimes as evidence where such a cut-off would exclude probative evidence." State v. Martin , 279 Mont. 185, 194, 926 P.2d 1380, 1386 (1996) (upholding the admission of incidents of sexual conduct that occurred five to six years apart). "Remoteness goes to the credibility of the evidence rather than its admissibility, unless the remoteness is so great that the offered evidence has no value." Martin , 279 Mont. at 194, 926 P.2d at 1386.
¶ 20 Here, the District Court excluded all but one of Frey's other bad acts and limited the State to using the false reporting convictions on cross-examination in the event Frey testified. The false reporting ***65 convictions involved dishonesty to law enforcement and thus were relevant to Frey's credibility for truthfulness. We conclude the District Court, in denying Frey's motion, did not "act[ ] arbitrarily without the employment of conscientious judgment or exceed[ ] the bounds of reason, resulting in substantial injustice." Passmore , ¶ 51.
¶ 21 2. Did the District Court abuse its discretion by admitting testimony about Frey's ability to see?
¶ 22 Frey contends the District Court erred by overruling his objection to Detective *91 Tkachyk's testimony about his eyesight, leading to an improper attack upon his credibility that constituted "a blatant violation" of M. R. Evid. 608(b). He also argues the evidence was irrelevant and, ultimately, contributed to his being "forced to testify" in violation of his right to remain silent. However, initially, Frey's broadly stated arguments fail to accurately capture the handling of this issue as reflected in the trial record.
¶ 23 During trial, the State offered witness testimony regarding Frey's ability to see during the years in which the offenses were alleged to have occurred. No objection was offered to this testimony. Then, Detective Tkachyk offered his observations about Frey's ability to see during the 2010 investigative interview of Frey, several years after the time of the alleged offenses. Again, no objection was offered to this testimony. Only near the end of the State's case-in-chief, when the State asked Detective Tkachyk about his observations regarding Frey's ability to see on a subsequent trip to Utah, did Frey object. Frey's objection was non-specific, stating only an objection "to this line of questioning," to which the prosecutor responded that "these questions will speak to Mr. Frey's credibility." After Frey's objection was overruled, the State elicited Tkachyk's testimony about Frey's apparent ability to see on the Utah trip.
¶ 24 On appeal, Frey argues broadly that all of the State's testimony about his ability to see was extrinsic evidence improperly offered by the State to prove specific instances of conduct in violation of M. R. Evid. 608(b), was irrelevant, and forced him to testify in violation of his right to remain silent-all premised on his non-specific objection made near the end of the State's case. As the State argues in its briefing, "Frey now makes all manner of objections about this isolated testimony out of all the evidence that was presented without objection at trial about Frey's ability to see-none of which he raised at trial." The State is correct that almost all of the "ability to see" evidence was admitted prior to any objection. As this Court has held, objections "must be made at trial in a timely manner and upon specific grounds" in order to "preserve an appeal."
***66 State v. Azure , 2002 MT 22, ¶ 44, 308 Mont. 201, 41 P.3d 899 (emphasis added) (citation omitted). Frey's objection lacked the specificity that the law requires. M. R. Evid. 103(a)(1).
¶ 25 Even if we were to assume, arguendo , that Frey's non-specific objection was sufficient to raise an issue regarding the "ability to see" evidence, including the evidence admitted without objection, the State was entitled to present evidence about Frey's ability to see at the time of the alleged offenses to counter his appearance at trial "as a blind man." Beyond a Rule 608(b) concern, Frey's appearance at trial made his physical capabilities a relevant consideration for the State's case-in-chief, as it went to the likelihood Frey could have committed the alleged crimes, and thus the State properly inquired about such matters as Frey's then-abilities to drive, swim, camp, and work. This evidence was properly admitted.[1]
¶ 26 Frey's Rule 608 argument on appeal, premised upon the State's response to his non-specific objection that it was offering extrinsic evidence to "speak to ... Frey's credibility," is correct on a theoretical level; that is, had Frey made a proper Rule 608 objection at trial, the State's response would have been unavailing, and the District Court would have erred by admitting the testimony in the State's case-in-chief. However, any such error was harmless. As explained above, much of the contested evidence became relevant at trial and was properly admitted. To the extent that the evidence concerning the subsequent Utah trip would have been improper under Rule 608(b), it constituted trial error under State v. Van Kirk , 2001 MT 184, 306 Mont. 215, 32 P.3d 735, was minimal in scope, was not proof of an element of the offense, was related to the State's proper proof of Frey's eyesight, and did not, in our view, appreciably impact the trial. We may only reverse a judgment for errors that prejudiced *92 the convicted party. Section 46-20-701(1), MCA. The State here demonstrates "there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction." Van Kirk , ¶ 47.
¶ 27 Frey's argument notwithstanding, admission of the evidence did not force him to testify and undermine his constitutional right to silence. The District Court's pre-trial ruling on the motion in limine was not an abuse of discretion. Frey freely chose to testify as a strategic decision.
***67 ¶ 28 3. Did the District Court err by imposing $9,181.45 in prosecution and jury costs as well as a $30 technology fee for each convicted count?
¶ 29 Frey contends that the sentencing court failed to consider his indigent status before imposing $9,181.45 in prosecution and jury costs on him. Section 46-18-232(2), MCA prohibits the court from imposing costs on a defendant "unless the defendant is or will be able to pay them." In determining what costs to impose, "the court shall take into account the financial resources of the defendant, the future ability of the defendant to pay costs, and the nature of the burden that payment of costs will impose." Section 46-18-232(2), MCA. The State concedes this issue.
¶ 30 Additionally, Frey contests the $30 technology fee imposed on him, arguing that it was improper for a $10 fee to be imposed for each of his three charged offenses. Section 3-1-317(1)(a), MCA ; State v. Pope, 2017 MT 12, 386 Mont. 194, 387 P.3d 870. The State concedes this issue as well.
¶ 31 We reverse and remand for entry for further proceedings necessary to properly determine Frey's ability to pay court costs, and imposition thereof accordingly, as well as the proper imposition of the technology fee.
¶ 32 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.

It could even have been argued, had a proper objection been made, that Frey's eyesight in 2010, only a few years after the alleged crimes, was likewise probative of his ability to see during the relevant period of time.